Carroll,
April 2, 1940. } Nos. 3143, 3144.

SARAH E. HALL *v.* MERRIMACK MUTUAL FIRE INSURANCE CO.

SAME *v.* ORIENT INSURANCE CO.

SAME *v.* NEW YORK UNDERWRITERS INSURANCE CO.

SAME *v.* ATLAS ASSURANCE CO., L'T'D.

*Cooper & Hall* (*Mr. Cooper* orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendants.

WOODBURY, J. The exception of the plaintiff mentioned last above presents no question of law for this court since the matter is one solely within the sound discretion of the court below and there is nothing to indicate any abuse or error of discretion in the ruling made. *Deming* v. *Foster*, 42 N. H. 165, 178, 179; *Sanborn* v. *Railroad*, 76 N. H. 65, 66, and cases cited, *Flannagan* v. *Shevenell*, 82 N. H. 403.

The defendants' exception to the granting of the plaintiff's motion for limitation of issues at the second trial of the actions against the Atlas and New York Underwriters companies also presents no legal question. "The question how far beyond the correction of the error the new trial must go in order to afford a fair trial, is one of fact. It is not for this court, except as to the inquiry whether there is evidence to warrant a finding one way or the other" (*West* v. *Railroad*, 81 N. H. 522, 523), and we find in the record nothing to indicate conclusively that the errors made at the first trial tainted all the issues then submitted. See also *Bullard* v. *McCarthy*, 89 N. H. 158, 165; *Vallee* v. *Company*, 89 N. H. 285, 291; *Emerson* v. *Company*, 87 N. H. 108, 113; *Bean* v. *Quirin*, 87 N. H. 343, 349; *McCrillis* v. *Company*, 85 N. H. 165, 170; *Arlington Mills* v. *Salem*, 83 N. H. 148, 159; *Maravas* v. *Corporation*, 82 N. H. 533, 543; *Derosier* v. *Company*, 81 N. H. 451.

The defendants' motions for a new trial present an equally narrow question for this court (*Jackson* v. *Smart*, 89 N. H. 457, 458), but they demand somewhat more extended consideration. The evidence adduced by the defendants in support of these motions relates to the parentage of the child which the plaintiff kept with her and boarded both in her house in Conway which burned and elsewhere. At the first trial the plaintiff testified that this child was a daughter of one Seth W. Norwood; that he paid the plaintiff for her board, their relations being solely of a business nature; that she had taken the

child when it was only four months old and had kept it continuously ever since, and that she did not know and had never inquired who its mother was. After this trial the defendants discovered evidence in the records of vital statistics in Rochester tending to show that the plaintiff was the child's mother, and at the second trial of the actions against the Atlas and New York Underwriters companies the plaintiff admitted that in fact she was the mother of the child.

With respect to this newly discovered evidence, the defendants contend, first, that it entitles them all to a new trial upon all issues, and second, that since the plaintiff admitted it to be true at the second trial of the actions against the two last named defendants, it conclusively establishes that she testified falsely at the first trial and so "affords the defendants a complete defense as a matter of law."

With respect to their second contention counsel for the defendants argue that the plaintiff's deliberately false testimony at the first trial, regardless of any other considerations, is sufficient to warrant an order of judgments for all defendants. No authorities in support of this proposition have been cited to us and diligent search upon our part has disclosed none. There are cases both here and elsewhere to the effect that evidence of a party's deliberate falsehood under oath with respect to issues in litigation is admissible not only to induce lack of confidence in his credibility but also to cast doubt upon the honesty and good faith of his claim (*Knight* v. *Heath*, 23 N. H. 410; *Sanborn* v. *Sanborn*, 65 N. H. 179; *Bennett* v. *Susser*, 191 Mass. 329), and there are also cases, criticised in 2 Wigmore, Evidence (2d *ed.*), s. 1008, *et seq.*, and not followed here (*Sanborn* v. *Sanborn, supra*), which hold that the rule expressed by the maxim *Falsus in uno, falsus in omnibus* operates as a matter of law to wholly discredit all of a party's testimony when it is found that he deliberately testified falsely in even one respect, but we have been able to find no authority anywhere for the broad rule that the falsehood of one party, regardless of the other evidence in the case, operates to compel an order of judgment for his adversary as a matter of law.

While novelty is not an all-sufficient reason for the rejection of a proposed rule, still utter lack of authority for a proposition indicates that it ought to be subjected to careful and serious scrutiny before adoption. Testing the rule contended for by the criterion of its apparent usefulness to accomplish substantial justice in the present day community, we find it wanting in merit. A major difficulty with the rule arises from the impossibility of applying it to cases in which both parties have been guilty of deliberate falsehood. Surely

the rule must operate against a defendant as well as against a plaintiff, and surely a deliberate falsehood found by the jury must stand upon the same footing as one confessed. In the event of found or admitted lying by both parties, the court would either have to waive the rule and permit the parties to go to the jury on the merits, or else by ruling of law give one liar a victory at the expense of the other. To adopt the first alternative would require that the rule be applied only in cases in which but one party has falsified and abandoned when both have done so, a result which reason does not support; to adopt the other would permit one party guilty of falsehood to recover by a ruling of law in spite of his lie from another party similarly situated (the rule with respect to the burden of proof upon the merits would not be germane), a result equally unsupported by reason as well as one which is in complete contradiction to the rule itself. We see no escape from the dilemma which the adoption of the proposed rule as one of law would create.

Upon full consideration we are content to adhere to the rule of *Sanborn* v. *Sanborn*, 65 N. H. 179, and permit the introduction of evidence of a party's deliberate falsehood, like evidence of other comparable misconduct on his part, such as attempting to bribe a juror (*Taylor* v. *Gilman*, 60 N. H. 506), or suppressing evidence (*Janvrin* v. *Scammon*, 29 N. H. 280, 291; *Story* v. *Railroad*, 70 N. H. 364, 378), for the jury to use or not as they see fit, either for the purpose of discrediting the offender's testimony, or for discrediting his entire case.

If the defendants are entitled to an order of judgments in their favor from this court, then, it can only be upon the ground that as a matter of law the plaintiff's false testimony constituted either a fraud or an attempt to defraud which under the terms of the policies renders them void.

In this state a fraudulent representation, in distinction from a negligent one, must have been made either with knowledge of its falsity or with conscious indifference to its truth. *Shackett* v. *Bickford*, 74 N. H. 57. But deliberate falsehood alone is not enough to establish fraud as a matter of law. *Metropolitan Life Ins. Co.* v. *Olsen*, 81 N. H. 143. It has long been the rule in this state, and this rule has been consistently adhered to, that in addition to deliberate falsehood it must appear that the false statement was made for the purpose or with the intention of causing the other party to act upon it. *Mahurin* v. *Harding*, 28 N. H. 128; *Hanson* v. *Edgerly*, 29 N. H. 343; *Page* v. *Parker*, 43 N. H. 363; *Syracuse Knitting Co.* v. *Blanchard*,

69 N. H. 447; *Spead* v. *Tomlinson*, 73 N. H. 46, 61; *Cunningham* v. *Company*, 74 N. H. 435; *Hamlin* v. *Oliver*, 77 N. H. 523; *Maxwell Ice Co.* v. *Company*, 80 N. H. 236; *Manock* v. *Company*, 86 N. H. 411; *Hall* v. *Insurance Co.*, 90 N. H. 191; *LaCourse* v. *Insurance Co.*, 90 N. H. 424. See also Am. Law Inst., Restatement, Contracts, s. 471. It does not follow from this, however, that in every instance in order to show fraud direct proof of intention to cause action by the falsehood must come from the lips of the speaker thereof. An admission of such an intention would bind the party who made it under the rule of *Harlow* v. *Leclair*, 82 N. H. 506, and so would establish the fraudulent character of a conscious falsehood, but proof of the intention with which a falsehood was told may also lie in the nature of the false statement itself. This was the situation presented in the cases of *Follett* v. *Insurance Co.*, 77 N. H. 457; *Saidel* v. *Insurance Co.*, 84 N. H. 232, and *Moreau* v. *Insurance Co.*, 84 N. H. 422. In these cases, as well as in many others which might be cited, no inquiry was made and none was required as to the intention in the mind of the speaker of the lie. The reason for this is not that proof of an intention to cause action was unnecessary but that conclusive proof of the existence of such an intention was found in the nature and circumstances of the lie itself.

In the case at bar there can be no question about the plaintiff's knowledge of the falsity of her earlier statements with respect to the birth of her child, but at the second trial of the actions against the two last named defendants, when she admitted that her earlier statements had been untrue, she said that she had made those statements not for the purpose of inducing any action thereon but only for the purpose of protecting the good name of her child. The question before us is whether this testimony of innocent intent may be taken at face value, or whether the falsehood is of such a nature or was told under such circumstances that in reason it must be found to have been uttered not for the purpose of protecting the child but for the purpose of causing action on the part of those to whom it was spoken.

It does not appear that the plaintiff made any statement at all to the representatives of the defendants with respect to the birth of her child until after she had brought these actions, and neither does it appear that prior to that time the defendants had interested themselves in the subject. The defendants' determination not to pay their policies must therefore have been for reasons wholly unconnected with the parentage of the child and the plaintiff must have been

fully aware of these facts. Under these circumstances it cannot be inferred that the plaintiff, when she told her falsehood, must have intended or expected thereby to induce the defendants to reconsider their earlier determination not to adjust the loss. This, however, does not dispose of the case. The reason for this is that the plaintiff's false statement, if made to the jury for the purpose of swaying them in her favor, would also constitute an attempt to defraud. *Follett* v. *Insurance Co.*, 77 N. H. 457, 459; *Moreau* v. *Insurance Co.*, 84 N. H. 422, 423.

On this phase of the case the first question is whether or not the plaintiff's falsehood has such bearing upon the issues at the first trial that it must be found to have been told to the jury for the purpose of influencing them in their consideration of those issues. At that trial, to quote from our former opinion in these cases, "The actions were defended on the grounds that the fire was set by the plaintiff's procurement or with her knowledge and consent, that one Seth W. Norwood was the real owner of the property, and that the plaintiff attempted to defraud the insurers both before and after the loss." The defendants take the position that the plaintiff's admittedly false statement bore directly upon all the issues raised by these defenses. Counsel for the defendants argue that since it appeared that the plaintiff was in financial need, and since it is in accordance with human nature for a mother to have more natural incentive to provide for the welfare of her own child than has a mere hireling to provide for the welfare of the child of another, the plaintiff's denial of maternity must have been for the purpose of inducing the jury to believe that she did not burn her own buildings for the sake of the insurance. The argument is at best tenuous, but even if it should be accepted, it shows a connection between the falsehood and the cause of the fire too indirect to warrant the conclusion that as a matter of law the falsehood must have been told for the purpose of inducing the jury to believe that the plaintiff did not set or procure the setting of the fire.

The bearing of the plaintiff's confessed falsehood upon the issue with respect to the ownership of the real property is also indirect and argumentative rather than direct and obvious. It has substantially the same bearing upon that issue as her falsehood, which at the former transfer we assumed, with respect to her social relations with Norwood. Again the connection between the matter falsified and the issue as to the title to the property is not direct enough to raise a conclusive inference as to the intent of the lie.

The only issue of fraud at the former trial with respect to the insurance upon the real property related to certain dealings of the plaintiff with the mortgagee thereof. We fail to see any connection at all between the plaintiff's false testimony and that alleged instance of fraud.

With respect to the insurance upon the personal property issues of fraud with respect to its quantity, value and ownership were raised at the former trial. The defendants then took and still maintain the position that the plaintiff's income during the years preceding the fire was not sufficient to enable her to support herself and the child and to purchase, as she said she did, the quantity, quality and amount of furniture and books which she claims was destroyed in the fire. The plaintiff testified to the receipt of gifts of money from relatives during that period and to the receipt at first of twenty-five and later of fifteen dollars per week from Norwood for the support of the child. Her false testimony with respect to the birth of the child does not directly corroborate her testimony as to income. It indicates and could only have been intended to indicate that Norwood paid her such sums as he did as the foster mother of his child and not as its natural mother, an issue collateral to the real issue which was whether or not she actually received the income which she said she did.

Regardless of specific issues, however, the defence of attempted fraud as a matter of law would be made out if it conclusively appeared that the plaintiff's falsehood was told to the jury for the purpose of creating in their minds a generally more favorable impression of her case than they would have had if they had known the truth. Although the plaintiff could be found to have lied for this purpose, we cannot say that she must be found to have done so. The reason for this is, to quote from our former opinion in these cases, "Her interest to shield herself and others from open disclosure in respect to matters not considered by her to be connected with the fire might well account for her dishonesty on the subject."

Considering the indirect and collateral bearing of the falsehood upon the issues in controversy between these parties, and considering the natural tendency of a person in the position of the plaintiff to conceal from the public the facts about the child's birth, and considering also her natural tendency to protect the child from the stigma of illegitimacy, we cannot say that all reasonable men are forced to conclude that the plaintiff's lie must have been intended to cause either the defendants or the jury to lend credence to her

claim and that it could not have been told for the purpose testified to. It follows that although the defendants have raised a question of fact as to the intention with which the plaintiff lied, they have not made it appear conclusively that she must have lied with the intention of causing action thereon, and so they have failed to make out a case of fraud or attempted fraud as a matter of law.

The question of whether or not the newly discovered evidence entitles the defendants to an order from this court for a new trial remains to be considered. The ruling of the court below upon this motion, while specific in its finding of due diligence, was otherwise general. Under well established principles, then, that court's ruling thereon is to be sustained if any valid reason therefor can be found. *Keyes* v. *Baird*, 88 N. H. 449, 451, and cases cited. The validity of the reason that the after discovered evidence would not probably cause a jury to return a different verdict upon another trial is established by the verdicts for the plaintiff in the second trial of the actions against the two last named defendants, at which trial the jury were fully informed of the true parentage of the child and of the plaintiff's previous false testimony with respect thereto, and were fully instructed, as appears in the charge submitted to us by counsel at oral argument, to the effect that the defendants were entitled to verdicts in the event of a finding that this false testimony was given for the purpose of causing action thereon.

The Atlas Assurance Company, L't'd., excepted to the denial of its motion for a directed verdict at the second trial of the action against it. This motion was based upon the proposition that the plaintiff in her proof of loss intentionally over-valued the personal property destroyed in the fire, and by so doing conclusively convicted herself of an attempt to defraud this defendant after the loss. It appears that the plaintiff gave as the value of this property its actual cost to her a few years previously (it also appears that she had gone to considerable pains to find out what this cost had actually been), although she knew that the furniture which was burned, having been used, had a fair market value only as second hand and that second hand furniture was not worth as much as new. In defence of the valuation which she placed upon her furniture she said that it was as valuable to her as it had been when she bought it and that she neither wanted nor intended to put it on the market for sale. While such a basis for the valuation of furniture in use in a home might constitute an attempt to defraud as a matter of law if taken by a person thoroughly familiar with insurance policies

and with the intricate nature of the question of value, the same result does not necessarily follow in the case of a person like the plaintiff, who, as we have previously said, was not possessed of an "accounting mind" and whose "logical processes of thought were weak," and who further appears to have had very little business experience and no previous experience at all in valuing furniture either new or second hand. The basis for the valuation adopted by the plaintiff raises at the most a question for the jury on the issue of fraud. Under the circumstances of the plaintiff's lack of knowledge, experience and business ability it does not conclude that issue as a matter of law.

Furthermore, there is evidence in the record to warrant a finding that the plaintiff's valuation of her furniture was not in fact excessive. A dealer in new and second hand furniture testified that during the interval between the plaintiff's purchase of her furniture and the fire there had been a general rise in prices so that furniture purchased at the time when the plaintiff said that she purchased hers was worth at the time of the fire, even at second hand, substantially what it had cost at the earlier date.

*Exceptions overruled in the first two actions;*

*judgments on the verdicts in the others.*

BRANCH, J., did not sit: the others concurred.