Rockingham
No. 86-087

Jay Edwards, Inc.

v.

Phillip Baker & a.

November 5, 1987

42

*Sheehan, Phinney, Bass & Green P.A.*, of Exeter (*Peter F. Kearns* on the brief and orally), for the plaintiff.

*Aeschliman & Tober*, of Portsmouth (*Stephen L. Tober* on the brief and orally), for the defendants.

PER CURIAM. In this dispute over real estate, the plaintiff appeals the granting of the defendants' motion to dismiss and the denial of the plaintiff's right to a jury trial by the Superior Court (*O'Neil*, J.). We hold that the plaintiff did not state a cause of action and therefore affirm.

The plaintiff operates a Toyota dealership on property leased from F.A.D. Enterprises, Inc. (F.A.D.) and abutting the Spaulding Turnpike in Portsmouth. F.A.D. is a land-holding company which owns and leases not only the plaintiff's land, where the dealership is located, but land adjacent to the plaintiff's dealership which the owners of the OMNE Mall complex plan to develop.

The plaintiff filed a petition on or about January 12, 1984, asking, *inter alia*, that the defendants be found to have breached the lease, be temporarily enjoined from transferring the parcel that the plaintiff leases, and be ordered to convey that land to the plaintiff. The petition named the following defendants: F.A.D.; Capital Management Corporation (C.M.C.), a partner in OMNE Partners II; Thomas E. Flynn, stockholder and president of F.A.D.; Phillip G. Baker, stockholder and treasurer of C.M.C.; and OMNE Partners II, the developers of the OMNE Mall complex.

All proceedings against Thomas Flynn were resolved by agreement dated August 11, 1986. As a result, he is no longer a named defendant for purposes of final disposition of this case.

The plaintiff leased the land on which the Toyota dealership operated, pursuant to an agreement with F.A.D. executed on August 4, 1976. The lease agreement, modified by a letter of the same date, included a provision that the plaintiff would have a right of first refusal should F.A.D. decide to sell the parcel that the plaintiff leases. At the time of the execution of the lease, the plaintiff's parcel and the OMNE parcel were part of an undivided tract which could not be sold without subdivision approval, according to the Portsmouth Zoning Ordinances. Subdivision approval was granted after November 1983.

On November 22, 1978, the F.A.D. board of directors voted to offer the plaintiff an option to buy the parcel it was leasing for $200,000, and to require it to make a $10,000 deposit in order to do so. The plaintiff never signed the option agreement. On August 13, 1981, F.A.D. offered to sell the plaintiff both the parcel it was leasing and the OMNE parcel for $950,000. The offer was not accepted.

On May 7, 1982, F.A.D. executed an agreement with C.M.C. granting it an option to lease the OMNE parcel beginning June 30, 1982, with the right to purchase it when the lease terminated a year

later. The agreement contained the condition that the plaintiff possessed the right of first refusal for the parcel which it was leasing.

In December 1982, the plaintiff was apprised of potential development plans for the OMNE Mall, as those plans might affect the plaintiff's parcel. There was additional discussion concerning the possibility of converting the plaintiff's right of first refusal into an option. As a result of this discussion, the plaintiff's attorney drafted an agreement which provided for a deposit of $1.00 for the option to purchase the leased parcel. Flynn indicated that he would be unwilling to sign such an agreement on F.A.D.'s behalf, and no further discussion ensued until the present suit was filed.

On July 25, 1983, F.A.D. and C.M.C. executed an agreement to extend C.M.C.'s option to purchase the property leased under the May 7, 1982 agreement until October 15, 1983. Additionally, C.M.C. was granted an option to purchase F.A.D.'s stock. On September 2, 1983, C.M.C. exercised the stock option, and the stock was transferred. F.A.D. continues to own the plaintiff's parcel, however, and the plaintiff's lease is still in effect.

The primary issue before us is whether the trial court erred in granting the defendants' motion to dismiss on the ground that the plaintiff failed to state a claim upon which relief could be granted.

In its petition, the plaintiff asserted that it was denied its right of first refusal to purchase the land it leased from F.A.D. It also argued that the defendants intentionally breached the terms of the lease and intentionally deprived the plaintiff of its right to operate a business, in violation of RSA chapter 356.

The defendants denied the plaintiff's allegations and counter-claimed that the plaintiff's claims were a misuse and abuse of process and an intentional interference with the interests of the defendants in developing the OMNE Mall. The defendant Thomas Flynn filed a separate answer and denied the material portions of the plaintiff's allegations.

The plaintiff filed its answer to the defendants' counterclaims and was denied its motion for a jury trial. The defendants filed a motion to dismiss, which the trial court granted. We affirm the granting of that motion.

In ruling on a motion to dismiss, the court must determine whether the facts as pled are sufficient under the law to constitute a cause of action. *See Hartman v. Town of Hooksett*, 125 N.H. 34, 35, 480 A.2d 12, 13 (1984); *Hamilton v. Volkswagen of America*, 125 N.H. 561, 562, 484 A.2d 1116, 1117 (1984). It must rigorously scrutinize the complaint to determine whether, *on its face*, it asserts

a cause of action. What is involved is a pre-trial, threshold inquiry that tests the facts in the complaint against the applicable law. *See* F. JAMES, CIVIL PROCEDURE § 7:13 (1965).

## I. *Breach of Right of First Refusal*

■■ In Count I of a pleading that even the plaintiff's appellate counsel describes as "meager" in its brief, the plaintiff alleges:

  A. That it leases the property upon which its business operates from the Defendant F.A.D. pursuant to the terms of a Lease executed on August 4, 1976.

  B. That also on August 4, 1976, the President of F.A.D. sent a letter to the Plaintiff incorporating additional provisions into the Lease and providing . . . a right to the Plaintiff to purchase the property upon which the Plaintiff operates should the Defendant F.A.D. decide to offer the property for sale.

  C. In direct violation of the . . . Lease, the Defendant F.A.D. *offered* to sell the property to C.M.C., with the *offer* being made in 1982.

(Emphasis added.) It is certainly true that "[i]n ruling on a motion to dismiss, all facts properly pleaded by the plaintiff are deemed true, and all reasonable inferences derived therefrom are construed most favorably to the plaintiff." *Weld Power Industries v. C.S.I. Technologies*, 124 N.H. 121, 123, 467 A.2d 568, 569 (1983). It is equally true, however, that a court "need not accept statements in the complaint which are merely conclusions of law." *Chasan v. Village District of Eastman*, 128 N.H. 807, 814, 523 A.2d 16, 20 (1986) (quoting *Mt. Springs Water Co. v. Mt. Lakes Vill. Dist.*, 126 N.H. 199, 200–01, 489 A.2d 647, 649 (1985)).

■■ The weakness in the above pleading concerns the word "offer," which is of course a legal term of art. Whether a given factual transaction is or is not an "offer" is a question of *law*, and its use here represents nothing more than a legal conclusion which the trial court was not required to accept. The plaintiff should rather have pled specific facts which could support the ultimate *legal conclusion* that an offer had been made—for example, the language used in the transaction and the circumstances surrounding the communication of the "offer." *See generally* 1 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS §§ 37–39 (3d ed. 1957). As the language of the complaint indicates, the plaintiff has not pled such facts. Count I thus fails to "plead sufficient facts to form a

basis for the cause of action asserted," *Mt. Springs supra,* and must fail. Because we have so concluded, we need not consider the question of whether the sale of the F.A.D. stock "triggered" the plaintiff's right of first refusal, an issue disclaimed below by the plaintiff and not properly before us.

## II. *Tortious Interference with Contract*

In an even more striking manner, Count II of the plaintiff's petition constitutes nothing more than a bald legal conclusion, utterly devoid of factual support on the face of the pleading, to wit: "The acts of the defendants constitute interference with the contractual relations between F.A.D. and plaintiff." Although Count II incorporates the "facts" alleged in Count I, these "facts" simply do not begin to support the legal conclusion contained in Count II.

In its brief, the plaintiff offers the following argument in support of its contention that Count II was wrongly dismissed: "Certainly, it cannot be denied that the Plaintiff has properly and adequate [sic] pled the various elements of [the tort of intentional interference with contract]." The plaintiff argues that the pleading itself is sufficient when one looks at the "various elements of this tort."

■■ The elements necessary successfully to plead a cause of action for tortious interference with contractual relations are "that (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference." *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d 985, 988 (1st Cir. 1983) (emphasis added). The *"facts"* alleged in the pleadings simply do not support the plaintiff's bald conclusion that the "various elements" of this tort are adequately pled.

## III. *Fraud*

In Count III the plaintiff alleges that the defendants' acts constituted a fraud. The plaintiff offers the following definition of fraud: "A fraud may be defined as an act or omission contrary to a legitimate duty which is contrary to good conscience and operates to the injury of another." This definition of fraud is inadequate under our settled case law.

■ The essence of fraud is a fraudulent misrepresentation. *See Hall v. Insurance Co.,* 91 N.H. 6, 10, 13 A.2d 157, 160 (1940). "[I]n order to withstand a motion to dismiss, the plaintiff must

specify the *essential details* of the fraud, and *specifically allege* the facts of the defendant's fraudulent actions . . . . It is not sufficient for the plaintiff merely to allege fraud in general terms." *Proctor v. Bank of N.H.*, 123 N.H. 395, 399, 464 A.2d 263, 265 (1983) (emphasis added). *See also Jarvis v. Prudential Ins. Co.*, 122 N.H. 648, 653, 448 A.2d 407, 410 (1982). The plaintiff's pleadings utterly fail "to allege specifically a fraudulent misrepresentation made by the defendant for the purpose of causing the plaintiff to act upon it . . . . Thus . . . [the] court properly dismissed the count[ ]." *Proctor v. Bank of N.H. supra.*

### IV. *Conspiracy in Restraint of Trade*

The substance of Count IV of the plaintiff's petition reads: "Defendants intend to deprive plaintiff of the right to operate its business at the present location by denying it the right to own the property in violation of RSA chapter 356." Once again, the plaintiff's factual allegations do not support the cause of action so conclusorily alleged.

RSA 356:2, I, on which the plaintiff's conspiracy claim is based, provides: "Every contract, combination, or *conspiracy* in restraint of trade is unlawful." (Emphasis added.) The operative word in the instant case is *conspiracy*. Since the term is undefined in the statute, its common-law meaning controls. *See* N. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 50.01 (Sands 4th ed. 1984).

▇▇▇▇▇ "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." 15A C.J.S. *Conspiracy* § 1(1), at 596 (1967). Its essential elements are: (1) two or more persons (including corporations); (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an *agreement* on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Bonds v. Landers*, 279 Or. 169, 174, 566 P.2d 513, 516 (1977); *Dickey v. Johnson*, 532 S.W.2d 487, 502 (Mo. Ct. App. 1975). References to conspiracy and conspiratorial conduct are set forth in the plaintiff's petition, and yet when used they are mere legal assertions, unsupported by factual content. The only fact set forth in the petition that might even remotely support a conspiracy claim is the conclusory allegation that the defendant F.A.D. "offered" to sell the property in question. As we have seen, however, this term is itself nothing more than a legal conclusion.

Once legal conclusions and amorphous accusatory statements are set aside, the plaintiff's pleadings stand bare of those essential facts that would give rise to any cognizable legal cause of action. When reduced to its essence, the plaintiff's petition is simply a collection of accusatory and argumentative statements. We hold that the pleadings do not meet the applicable test, which requires that a plaintiff's pleadings, on their face, assert a cause of action if the claim is to survive a motion to dismiss. In view of our decision on this issue, we need not address the jury trial question.

*Affirmed.*