### MANCHESTER MANUFACTURING ACQUISITIONS, INC.; Gary A. Dinco; Felix J. Weingart, Jr.

v.

### SEARS, ROEBUCK & CO.; Dylex Limited; Dylex (Nederland) B.V.; 293483 Ontario Ltd.; Harold R. Levy; Mac Gunner; Kenneth Axelrod.

#### Civ. No. 91–752–SD.

United States District Court,
D. New Hampshire.

Sept. 30, 1992.

Randall F. Cooper, North Conway, N.H., for plaintiffs.

James P. Bassett, Concord, N.H., Eugene J. Kelley, Jr., Chicago, Ill., for Sears.

Kenneth H. Merritt, Burlington, Vt., John L. Putnam, Hanover, N.H., Steven J. Kantor, Burlington, Vt., for other defendants.

## ORDER

DEVINE, Senior District Judge.

This litigation arises out of the 1988 sale to plaintiffs of a distribution warehouse business, Manchester Manufacturing, Inc. ("MMI"), located in Colebrook, New Hampshire. Plaintiffs, Manchester Manufacturing Acquisitions, Inc. ("Acquisitions"), Gary A. Dinco, and Felix J. Weingart, Jr.,[1] bring this civil action against Sears, Roebuck and Company ("Sears"), Dylex Limited, Dylex (Nederland) B.V., 293483 Ontario Ltd., Harold Levy, Mac Gunner, and Kenneth Axelrod, alleging that defendants violated federal and state securities laws and made fraudulent and/or negligent misrepresentations to plaintiffs in connection with said sale.[2] Jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1332. Presently before the court are motions to dismiss[3] filed by defendants under Rule 12(b)(6), Fed. R.Civ.P.

## BACKGROUND

■ When ruling on a motion to dismiss under Rule 12(b)(6), the court must follow the requirement that facts alleged in the complaint are to be construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). Also, the following allegations made by plaintiff must be accepted as true. *Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991).

MMI, founded in 1973 as a joint venture among defendants Sears, Dylex Limited, and 293483 Ontario to manufacture clothing for Sears, subsequently became a distribution center for Sears. Plaintiffs Dinco and Weingart were employed by MMI, Dinco as plant manager, and Weingart as financial comptroller. Dinco and Weingart, after learning that MMI was to be sold, were advised by defendants Levy, Gunner, and Axelrod[4] "that the sale of MMI would not affect MMI's distribution business with Sears." Complaint ¶ 20.

Although it refused to give certain specific volume guarantees, Sears also promised, through "written and oral communications", Complaint ¶ 22, that it would continue its distribution business with MMI "at

---

1. Dinco and Weingart are co-owners and officers of Acquisitions.

2. Count I of plaintiffs' complaint alleges violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Count II alleges violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5. Count III alleges violations of the New Hampshire Blue Sky Law, New Hampshire Revised Statutes Annotated (RSA) 421–B:3.

Counts IV and V allege claims of fraudulent and negligent misrepresentation, respectively.

3. There are two motions, as Sears moved to dismiss in a motion separate from that of the remaining defendants.

4. During the relevant time period, the individual defendants were shareholders and officers of 293483 Ontario as well as directors and/or officers of MMI.

substantially the same level." [5] At this time, although not disclosed to plaintiffs, Sears was actually planning to terminate all distribution business with plaintiffs. All other defendants are alleged to have known this fact without revealing it to plaintiffs. While plaintiffs desired to purchase the business entirely as a stock acquisition, ultimately part of the sale was allocated as an asset sale for the convenience of the defendants. Shortly after the sale, Sears decreased, and by the end of 1989 terminated, its distribution business with MMI. MMI's business volume and profits were thereby suddenly and substantially decreased, which ultimately led to First New Hampshire Bank's November 1990 foreclosing on the loans obtained by Acquisitions to finance the purchase of MMI.

## DISCUSSION

### I. Count I—Securities Act of 1933, 15 U.S.C. § 77q(a)

■ Count I alleges a violation of the Securities Act of 1933, 15 U.S.C. § 77q(a).[6] Defendants object on the ground that there is no private right of action under section 77q(a). Since section 77q does not explicit-

ly state any private right of action, the issue at hand is whether the court may imply one. While the First Circuit has not established a clear precedent,[7] the majority of other circuits appear to deny a private right of action under section 77q(a).[8]

This court, relying upon the view expressed in *Dyer v. Eastern Trust & Banking Co.*, 336 F.Supp. 890, 903–05 (D.Me. 1971), that "the statute was intended only to afford a basis for injunctive relief and, if willfulness is present, for criminal liability, and was not intended to provide a civil remedy for damages," previously held that there is no private right of action under section 77q. *Manchester Bank v. Connecticut Bank & Trust Co.*, 497 F.Supp. 1304, 1314 (D.N.H.1980). Furthermore, this court, considering the question of a private right of action in securities fraud cases under the balancing factors of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1974),[9] stated that it "remains unconvinced that Section 17(a) implies a private right of action." *Gilman v. Shearson/American Express, Inc.*, 577 F.Supp. 492, 497 (D.N.H.1983).

Again, the court is not convinced that it should abandon its own precedent. Accordingly, Count I, alleging violation of sec-

---

5. Prior to the sale of MMI to plaintiffs, Sears' distribution business with MMI apparently comprised about seventy percent of MMI's overall business.

6. The Act states:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate a fraud or deceit upon the purchaser.

7. *See Cleary v. Perfectune, Inc.*, 700 F.2d 774, 779 (1st Cir.1983) (declining to decide the issue).

8. *See, e.g., Schlifke v. Seafirst Corp.*, 866 F.2d 935 (7th Cir.1989); *Newcombe v. Esrey*, 862 F.2d 1099 (4th Cir.1988) (en banc); *Currie v. Cayman Resources Corp.*, 835 F.2d 780, reh'g denied, 841 F.2d 399 (11th Cir.1988); *Brannan v. Eisenstein*, 804 F.2d 1041 (8th Cir.1986); *contra, Kirschener v. United States*, 603 F.2d 234 (2d Cir.1978) (there is a private right of action under § 17(a)), cert. denied, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Rhoades v. Powell*, 644 F.Supp. 645 (E.D.Cal.1986) (private right exists under Securities Act of 1933), aff'd without opinion, Rhoades v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 217 (9th Cir.1992). *See generally Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990) (collecting cases).

9. The Supreme Court ruled that, when determining whether there exists a private right of action under a statute, the court should balance four factors: (1) whether the plaintiff is a member of the protected class, (2) whether there is any indication of legislative intent on the issue, (3) whether a private right would be consistent with the legislative purpose, and (4) whether the cause of action is one traditionally relegated to state law. *Cort, supra,* 422 U.S. at 78, 95 S.Ct. at 2088.

tion 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), is dismissed with prejudice.[10] Rule 12(b)(6), Fed.R.Civ.P.

## II. Count II, Statute of Limitations Issue

▮ Plaintiffs allege as Count II that the defendants violated the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b).[11] All defendants contend that this count is barred because the limitations period has run and that, consequently, judgment on the pleadings as to this claim should be entered in their favor. Rule 12(c), Fed.R.Civ.P.[12]

The United States Supreme Court established the proper limitations period for securities fraud actions in *Lampf, Pleva, Lipkund, Prupis & Petigrow v. Gilbertson,* 501 U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Actions are limited to one year after discovery of the facts constituting the violation, and within three years after the violation itself. *Id.* 501 U.S. at ——, 111 S.Ct. at 2782.

Herein, plaintiffs allege that defendants misrepresented Sears' intentions for its distribution business with MMI. The sale of the MMI stock at issue was consummated with a closing on December 29, 1988, and the complaint was filed on December 26, 1991. Assuming, as both sides seem to, that the "violation" from which the limitations period runs was the date of the closing, and not the previous negotiations, plaintiffs managed to file the complaint within the applicable three-year period.

The issue is thus whether plaintiffs filed their complaint within one year of discovery of the facts constituting the violation, as *Lampf* requires. Defendants suggest that the plaintiffs discovered or should have discovered the alleged violation in December of 1989, when Sears canceled their contract. Plaintiffs argue that they in fact did not discover their cause of action simply upon cancellation of the Sears contract, but only when they learned that defendants by their conduct in connection with the sale of stock had committed fraud. *See* 17 C.F.R. § 240.10b–5.[13] Plaintiffs' allegations, when construed in their favor and accepted as true, include acts and omissions arguably in violation of 17 C.F.R.

---

**10.** While plaintiffs direct the court's attention to a plethora of cases that embrace the proposition that a federal court may fashion a remedy when a plaintiff's right has been violated, *e.g., Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), the court remains unpersuaded in the instant case. Plaintiffs' argument is not helpful because, before the remedy may be fashioned, it appears that plaintiff must establish a private right. Additionally, the string of cases allowing for a private cause of action under other federal statutes is not applicable to cases of securities fraud.

**11.** This section states,

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
. . . .
(b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**12.** Rule 12(c) in pertinent part provides that after "the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Here too, the court "accept[s] as true all material allegations of the . . . complaint, and construe[s] them in favor of the complaining party." *International Paper Co. v. Town of Jay,* 928 F.2d 480, 482 (1st Cir.1991). A Rule 12(c) motion, like those under Rule 12(b)(6), will not be granted "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief.'" *Id.* at 482–83 (citing, *inter alia, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

**13.** In pertinent part, the regulation provides that

It shall be unlawful for any person . . .
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or,
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.

§ 240.10b–5. However, while plaintiffs contend that it is within their reach to state with more precision when they discovered that defendants allegedly defrauded them, they have not done so. Thus, on the record before it, while the court is unwilling to say that plaintiff can prove no set of facts in support of this claim which would entitle them to relief, it is also unable to resolve the limitations period issue. Accordingly, defendants' motions for judgment on the pleadings are denied. Additionally, for the reasons discussed below, Count II is dismissed without prejudice as to all defendants *except* Sears [14] for failing to meet the Rule 9(b), Fed.R.Civ.P., threshold of specificity.

### III. Pleading Fraud with Particularity

Underpinning the majority of plaintiffs' claims are their allegations that the defendants—the varied individuals and entities involved in the sale of MMI to plaintiffs— fraudulently induced plaintiffs to purchase MMI through misrepresentations and omissions regarding the future of Sears' distribution business with MMI. Arguing that plaintiffs have failed to plead their fraud claims with sufficient particularity to satisfy Rule 9(b), Fed.R.Civ.P., defendants contend that those counts should therefore be dismissed. Having already dismissed Count I, the court considers this argument only as to Counts II, III, and IV.

■ Rule 9(b) mandates that when pleading fraud, "the circumstances constituting fraud ... shall be stated with particularity." Rule 9(b), Fed.R.Civ.P. Thus, the complaint must contain "factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the [allegedly false representations], and were known and deliberately or recklessly disregarded by defendants." *Romani v. Shearman Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991); *Vachon v. BayBanks, Inc.*, 780 F.Supp. 79 (D.Mass. 1991). Furthermore, it is well settled that

whether a general fraud or a securities fraud case, Rule 9(b) requires that plaintiffs specify the time, place, and content of an alleged false misrepresentation. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987) (citing *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980) as to general fraud); *Romani, supra*, 929 F.2d at 878 (citing *Wayne Investment v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984) as to securities fraud). As an additional matter, this court has clarified that where, as here, "multiple defendants are involved, each defendant's role in the fraud must be particularized." *Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32, 40 (D.N.H. 1991) (citation omitted). *Accord Konstantinakos v. FDIC*, 719 F.Supp. 35, 39 (D.Mass.1989). This rule is meant to put "each defendant on notice of what role he is alleged to have played in the fraud." *Shields, supra*, 766 F.Supp. at 40. "Thus, in the securities context, and in general, this Circuit has strictly applied Rule 9(b)." *Becher, supra*, 829 F.2d at 288.

### a. Counts II and III

■ Under both federal and state securities laws, plaintiffs allege fraud on the part of Sears as a result of Sears' representing to "plaintiffs [and to the relevant bank president incidental to obtaining the first mortgage] that even after the sale by Sears of its stock interest in MMI, the Sears distribution business would remain at substantially the same level and probably increase in the ensuing years." Complaint at ¶¶ 22, 28. Those assurances were given by Sears, even though all the while it allegedly knew that it "was implementing a reorganization plan regarding its distribution business with an intent to terminate all distribution business with MMI in the near future." *Id.* at ¶¶ 23, 28. The allegations of fraud as to all other defendants are essentially the same. *See* Complaint at ¶¶ 22, 24.[15]

---

**14.** While defendant Sears raised a Rule 9(b) argument as to paragraphs 43(a)–(c) of Count IV, as did the other defendants, Sears did not raise a Rule 9(b) dismissal argument as to Counts II and III.

**15.** The three individual defendants are alleged to have "advised" Weingart and Dinco that the

Even given the highly deferential reading required by Rule 12(b)(6), the court finds plaintiffs' broad allegations too conclusory and lacking in a specific factual basis. *See Shields, supra,* 766 F.Supp. at 38 (allegations "in the form of mere conclusions, accusations, or speculation" are insufficient under Rule 9(b)). Plaintiffs simply do not, in requisite detail, allege facts and figures regarding the alleged adverse circumstances of Sears' reorganization plans and decision to terminate business with MMI. As with the plaintiffs in *Romani,* plaintiffs' complaint herein is comparatively barren. *See Romani, supra,* 929 F.2d at 879–80 (collecting cases in which plaintiffs do allege in sufficient detail the facts and figures upon which their claims were based). In the broad strokes of the complaint, plaintiffs' assertions are made without the necessary supporting facts. *Cf. id.* at 878–79 (wherein the only statement in the complaint sufficiently factual to provide adequate support for a fraud claim contained quoted material from a defendant's 10–K form referring to a two-year-old cash flow problem).

Plaintiffs' allegations that Sears began to decrease its distribution business within weeks of the sale of MMI and that Sears notified plaintiffs in December 1989 that it would not renew the distribution contract, *see* Complaint at ¶¶ 31 and 32, do not establish that "adverse circumstances existed at the time of the [alleged false misrepresentations], and were known and ... disregarded by defendants." *Id.* at 878. Similar to the scenario in *Romani,* these events post-date the time at issue and thus lack evidentiary significance as to what was known by whom during the time the alleged broad and nonspecific assurances of ongoing and increasing business were made to plaintiffs. Accordingly, the court finds and rules that plaintiffs' complaint fails to state with sufficient particularity

the circumstances constituting the alleged fraud,[16] and therefore dismisses Counts II and III without prejudice as to all defendants except Sears.

### b. Count IV, Common Law Fraudulent Misrepresentation

■ Although the parties have not explicitly stated that possible choice-of-law issues are to be resolved in favor of New Hampshire law, the court assumes on the record before it that this is so.

Under New Hampshire law, a representation is fraudulent if made with knowledge of its falsity or with conscious indifference to its truth, and if the false statement was made for the purpose or with the intention of causing another to act on it. *Hall v. Merrimack Mut. Fire Ins. Co.,* 91 N.H. 6, 10, 13 A.2d 157, 160 (1940).

*Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652, 662 (1st Cir.1981); *University System of N.H. v. U.S. Gypsum Co.,* 756 F.Supp. 640, 650 (D.N.H.1991); *Proctor v. Bank of N.H.,* 123 N.H. 395, 399, 464 A.2d 263, 265 (1983). Here, too, Rule 9(b) demands pleading with sufficient particularity, and all defendants argue that plaintiffs' complaint is insufficient.

Plaintiffs primarily present two theories upon which to ground their fraudulent misrepresentation claim. At the outset, they allege that defendants are liable under this common law claim because they allegedly violated three different statutes: the Securities Act of 1933, 15 U.S.C. § 77q(a); the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and the New Hampshire Uniform Securities Act, N.H. RSA 421–B:3. Defendants all contend that, even if statutory violations were ultimately found, such would not serve to provide an independent basis for a claim of common law fraud, and plaintiffs would still have to establish the

---

MMI sale would not affect its distribution business with Sears. Complaint at ¶ 20. Beyond that, "defendants" are collectively referred to throughout the complaint.

**16.** That being so, the court need not reach defendants' other arguments that plaintiffs have also failed to specify the time, place, and con-

tent of the alleged false misrepresentations, *see Feinstein v. RTC,* 942 F.2d 34, 42 (1st Cir.1991), and failed to particularize the role each defendant is alleged to have played in the fraud, *Shields, supra,* 766 F.Supp. at 40. However, those too would be high hurdles to clear based upon the complaint before the court.

requisite elements of fraudulent misrepresentation.

Since the court has determined that the Securities Act of 1933 does not carry with it an implied private right of action, it is especially doubtful that Count I could be recycled as a fraudulent misrepresentation claim. As to the other statutes, however, even assuming that the court were to apparently expand the reach of New Hampshire law, as the plaintiffs urge,[17] and find that their allegations of statutory violations set forth in Counts II and III were adequate to make a showing of fraud, it finds that the allegations in paragraphs 43(a)-(c) of the complaint, and those incorporated therein, still fall short of meeting the Rule 9(b) threshold in two respects.

Initially, plaintiffs simply do not sufficiently specify facts regarding time, place, and content of the alleged false or fraudulent representations. *See Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir.1991). Even if plaintiffs' broad allegations of the relevant time [18] are sufficient under the rule, they cannot completely carry the day. Nowhere do plaintiffs supply any detail about where the relevant misrepresentation took place, although defendants in this case number seven (four entities and three individuals), with residences and/or places of business from Chicago to Colebrook and Amsterdam to Toronto and Montreal. Additionally, plaintiffs do not sufficiently specify who representing which entity said what to whom. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.) (the circumstances which must be pleaded in detail include the who, what, when, where, and how of the alleged fraud), *cert. denied*, — U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). In fact, only Sears, Levy, Gunner, and Axelrod are anywhere specifically mentioned. "Absent this rudimentary information, the com-

plaint [falls] measurably short of meeting Rule 9(b)'s specificity requirement." *Feinstein, supra*, 942 F.2d at 42.

Finally, in this multi-defendant case, plaintiffs fail to particularize the role of each defendant, *see Shields, supra*, 766 F.Supp. at 40, thus failing to place each "on notice of what role he is alleged to have played in the fraud." *Id.* As in *Shields*, the complaint herein, for the most part, repeatedly alleges that "the defendants" engaged in the fraudulent conduct without specifying how each of the seven defendants participated.

Thus, for the foregoing reasons, that portion of Count IV grounded upon paragraphs 43(a) through (c) must be and hereby is dismissed without prejudice as to all defendants.

■ As an additional theory, in Count IV plaintiffs allege that defendants committed fraud because they intentionally failed to disclose material facts to plaintiffs regarding Sears' long-term plans and its alleged intention to discontinue its distribution business with MMI. *See* Complaint at ¶¶ 43(d), (e). It is well settled that "[i]ntentional concealment of a material fact may constitute fraud." *University System of N.H., supra*, 756 F.Supp. at 651 (citing *Batchelder v. Northern Fire Lites, Inc.*, 630 F.Supp. 1115, 1118 (D.N.H.1986) (citing *Leclerc v. Prudential Ins. Co. of Am.*, 93 N.H. 234, 39 A.2d 763 (1944))). "It is similarly well established that for a failure to disclose to be actionable fraud, there must be a duty arising from the relation of the parties to so disclose." *Batchelder, supra*, 630 F.Supp. at *id.* (citations omitted). As in *Batchelder*, review of the pleadings herein fails to reveal any fiduciary relationship between the parties from which such a duty would arise. However, exceptions to this general rule have been developed. For example, "partial disclosure may give rise

---

**17.** Plaintiffs invite the court to find that the rule reiterated in *Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 302–03, 605 A.2d 208, 212 (1990), that a causal violation of a statutory standard of conduct constitutes legal fault in the same manner as does the violation of a common law standard of due care, should also apply to intentional torts. The court finds it unnecessary and unwise to resolve the matter at this time, and

thus offers no opinion regarding the merits of plaintiffs' contention.

**18.** The time period set forth is between "winter/spring of 1988" and the date of the closing in December 1988. *See* Complaint at ¶¶ 19, 20, 29.

to a duty to fully disclose when the partial disclosure, standing alone, is deceptive." *Dawe v. American Universal Ins.*, 120 N.H. 447, 450, 417 A.2d 2, 4 (1980) (citations omitted). *See generally* W. Keeton, *Prosser and Keeton on the Law of Torts* 738 (5th ed. 1984). Thus, at least as to those defendants whom plaintiffs allege disclosed an intention on the part of Sears to continue its distribution business while possessing knowledge that made such a partial disclosure deceptive, plaintiffs conceivably make the requisite showing of fraud. But again, Rule 9(b) demands more. As discussed *supra*, plaintiffs fail to adequately specify the time, place, and content of the relied-upon representations and fail to establish the role of each defendant in the fraud with sufficient particularity. Accordingly, that portion of Count IV grounded upon paragraphs 43(d) and (e) is also dismissed without prejudice as to all defendants.

### IV. Count V—Common Law Negligent Misrepresentation

█ In order to withstand a Rule 12(b)(6) motion to dismiss, plaintiffs must allege "defendant's negligent misrepresentation of a material fact and the plaintiff's justifiable reliance on that misrepresentation." *Hydraform Products Corp. v. American Steel & Aluminum Corp.*, 127 N.H. 187, 200, 498 A.2d 339, 347 (1985) (citing *Ingaharro v. Blanchette*, 122 N.H. 54, 57, 440 A.2d 445, 447 (1982)).

In Count V, plaintiffs complain that Sears and all other defendants negligently misrepresented material facts to plaintiffs during the course of the sale of MMI by negligently failing to disclose material facts relating to Sears' then-present plans to discontinue its distribution business with MMI and/or its long-term plan to divest itself of independent distribution centers, including MMI. Plaintiffs further complain that they relied upon the assurances and representations made and the relevant disclosures not made by all defendants when they agreed to purchase MMI. Defendants argue on various grounds that plaintiffs fail to state a claim, thereby necessitating dismissal of Count V.

Sears primarily contends that even if it had a "plan" to reorganize or not renew its annual contract with MMI, it had no duty to disclose this information to plaintiffs.[19] However, as is arguably the case here, "[e]ven if a seller has no duty originally, partial disclosure by a seller creates a duty of full disclosure." *Ingaharro, supra*, 122 N.H. at 57, 440 A.2d at 447 (citations omitted). While the New Hampshire Supreme Court stated this exception to the no-duty rule in *Ingaharro*, it went on to discuss it in greater detail in *Massaro v. Carter*, 122 N.H. 804, 807, 451 A.2d 380, 381 (1982).

Although factually distinguishable from the case at bar in that the plaintiffs in *Massaro* purchased a motel with a defective pool, the court finds no reason not to be guided by the legal principles therein. "Once [the defendant] chose to inform the plaintiffs about the [issue at hand, i.e., the] pool's condition, she had an obligation to tell the truth." *Id.* "Furthermore, once the defendant disclosed part of the information concerning the [issue at hand], she was under an obligation to reveal" other relevant and material facts known to her. *Id.* Like the defendant in *Massaro*, the court herein finds that once defendants volunteered optimistic information regarding Sears' future plans as to its distribution business with MMI, they assumed a duty to disclose relevant known information to the contrary.

Moreover, in *Hydraform*, a case factually more analogous to the one at bar, "the statement allegedly made by [defendant's] agent was in the form of a promise, but it implied that [defendant] had the capacity and the intention to" do that which was promised. *Hydraform, supra*, 127 N.H. 187, 201, 498 A.2d 339, 347 (1985). "Thus it could have supported the conclusion that the defendant made a factual representa-

---

**19.** Sears also unsuccessfully attempts to convince the court that plaintiffs never alleged that they received or relied upon any representations made by Sears. However, such a conclusion can only be the result of an extremely skewed reading of plaintiffs' complaint. *See, e.g.*, Complaint at ¶¶ 22, 25, 28–29.

tion." *Id.* Had there been evidence in *Hydraform* that defendant "initially lacked the capacity or the intent to perform" its promises made to plaintiff, apparently as an inducement for plaintiff to enter into a contract with defendant, then plaintiff's survival of a directed verdict motion would not have been error on the negligent misrepresentation claim. *Id.* Accordingly, the court concludes that Sears' representations regarding its continued business with MMI after the latter's sale can also be so construed as a promise, implicit in which were false representations in light of Sears' plan to reorganize.

Briefly, the court turns to other arguments, all unavailing, raised regarding Count V. For example, all defendants but Sears argue that pursuant to Rule 9(b) this claim must be dismissed for lack of specificity as to all defendants. It is long settled that "Rule 9(b) has no application to such 'allegations of breach of duty' grounded on 'conduct not amounting to fraud or mistake.'" *Seidel v. Public Serv. Co. of N.H.*, 616 F.Supp. 1342, 1357 (D.N.H.1985) (quoting *Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 236 (D.Mass.1979)). *See also In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 598 n. 5 (E.D.Mich.1985) (particularity requirement of Rule 9(b) does not apply to claim of negligent misrepresentation).

These same defendants also attempt to argue that they cannot be held responsible for failing to disclose facts about Sears' future business intentions because they could not know them with any degree of certainty, thus, such facts were not reasonably within their knowledge. However, because Rule 9(b) has no application here and because the court takes, as it must, plaintiffs' allegations of fact as true, the court finds plaintiffs' complaint to adequately allege facts upon which liability could rest. Plaintiffs allege that defendants represented that the Sears distribution business with MMI would not diminish after the sale of

MMI, that at the same time they knew of Sears' reorganization plan with its attendant negative implications regarding business with MMI, and that they did not disclose this material fact to plaintiffs. *See* Complaint at ¶¶ 22, 24–26. *Cf. Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (allegation that defendant "knew" a relevant fact not sufficient in context of a fraud claim wherein Rule 9(b) does apply).

Furthermore, the court finds defendants' argument that plaintiffs' actual knowledge of certain facts precludes their reliance upon defendants' allegedly false statements to be meritless. Even if, as defendants claim, plaintiffs had actual knowledge that their contract with Sears was subject to annual renewal, Sears denied particular volume guarantees, and the contract had no specific volume guarantees, the court must accept as true plaintiffs' factual allegations regarding representations made, information allegedly known and not disclosed, and the fact that plaintiffs did not know of the falsity of the representations or of the omissions of fact. *See* Complaint at ¶ 30.

Thus, for all the reasons herein discussed, the court finds that Count V survives the Rule 12(b)(6) challenge.

## V. Damages

The last issue necessitating the court's consideration is the type of damages recoverable under each remaining cause of action; i.e., Counts II, III, and V. Plaintiffs expansively and in blanket fashion claim entitlement to all elements of damages recoverable at law, itemizing many, although not appending them to the individual counts set forth in their complaint.[20] While defendants argue that paragraph 47 of the complaint should thus be dismissed in its entirety because many of the elements of damage sought are not recoverable under each theory of liability, and some are not

---

**20.** Plaintiffs' prayer for relief contains claims for the amount of their entire investment, the deficiency amounts due to lenders, including interest accrued and accruing, loss of present and future earnings, loss of reasonably foresee-

able profits, attorneys' fees, and enhanced damages as a result of wanton, malicious, and oppressive conduct, punitive damages, interest, costs, and expenses. Complaint ¶ 47.

recoverable at all, the court declines the invitation to do so.

Under Count II, the alleged violation by defendants of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), plaintiffs'

> rights and remedies ... shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of.

15 U.S.C. § 78bb(a) (West Supp.1992). On its face, this section, section 28(a) of the Securities Exchange Act of 1934, precludes recovery of punitive damages for the violation of the federal law.[21] *See Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1223 n. 20 (8th Cir. 1990); *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 29 (2d Cir.1986) (citing, inter alia, *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1286 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970)), *cert. denied sub nom., Arthur Andersen & Co. v. Manufacturers Hanover Trust Co.*, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). The issue thus becomes how to construe "actual damages".

Defendants argue that "actual damages" does not include recovery of the "entire investment", "deficiency amounts due to lenders", "loss of present and future earnings", and "loss of reasonably foreseeable future profits". Plaintiffs, however, citing *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986), attempt to argue that it is an open question because Congress did not define "actual damages" under section 28(a). Thus, plaintiffs urge the court to read *Randall* in conjunction with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed.2d 741 (1972) (wherein the Court fashioned an "out-of-pocket" measure[22] of damages), as allowing all of its claims for relief.

While it is true that there is no guiding Congressional definition of "actual damages", *Randall, supra*, 478 U.S. at 662, 106 S.Ct. at 3152, this court does not read *Randall* or *Affiliated Ute Citizens* to have expanded recovery beyond actual damages,[23] even though actual damages may include an "out-of-pocket" measure of same. *See Randall, supra*, 478 U.S. at 662, 106 S.Ct. at 3152 (citing *Harris v. American Investment Co.*, 523 F.2d 220, 225 (8th Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976)).

While prohibiting punitive damages on a federal claim, section 77bb(a) provides that the remedies therein shall be in addition to any other, thus not precluding punitive damages and attorney's fees under state law should they be appropriate. *See Holmes v. Bateson*, 434 F.Supp. 1365, 1389 (D.R.I.1977), *aff'd in part, rev'd in part on other grounds*, 583 F.2d 542 (1st Cir. 1978). Under New Hampshire law, however, they are, for the most part, unavailable.

The parties do not dispute that under Count III, the alleged violation of RSA

---

21. Additionally, "attorneys' fees are not available as a matter of course under rule 10b-5." *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1142 (5th Cir.1988) (citation omitted), *vacated and remanded on other grounds*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989); *Samaritano & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 110 F.R.D. 52, 54 (D.P.R.1986) ("it is settled that only in limited circumstances attorney's fees may be allowable under Rule [10b-5]"). The exception, not herein relevant, considered by the *Samaritano* court was the application of a local rule that provided for the granting of attorney's fees when the losing party has acted with obstinacy. *Id.*

22. Such damages were described by the Court as the "'difference between the fair value of all that [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct.'" *Randall, supra*, 478 U.S. at 661–62, 106 S.Ct. at 3152 (quoting *Affiliated Ute Citizens, supra*, 406 U.S. at 155, 92 S.Ct. at 1472).

23. Rather, the *Randall* Court grappled with the narrow "actual damages" issue of whether a rescissory recovery was strictly limited to plaintiff's *net* economic harm, i.e., actual damages reduced by tax benefits received from a tax shelter investment. The Court held that it was not.

421–B:3, damages are limited to "actual damages sustained plus interest from the date of payment or sale, costs, and reasonable attorney's fees." RSA 421–B:25 II (1991).

Furthermore, under Count V, the negligent misrepresentation claim, neither punitive damages nor New Hampshire's liberal compensatory damages are available. *See, e.g., DCPB, Inc. v. City of Lebanon,* 957 F.2d 913, 915 (1st Cir.1992) (punitive damages not allowed in New Hampshire and "enhanced damages" are reserved for "intentional torts committed under unsavory circumstances"). "The general rule is, therefore, that the measure of damages recoverable for misrepresentation, whether intentional or negligent, is actual *pecuniary* loss." *Crowley v. Global Realty, Inc.,* 124 N.H. 814, 818, 474 A.2d 1056, 1058 (1984).

Accordingly, although the court denies defendants' motions to dismiss plaintiffs' claims for damages, only those elements of damages consistent with the court's conclusions herein remain.

### CONCLUSION

Based upon the foregoing, defendants' motions to dismiss (documents 10 and 22) are granted in part and denied in part as follows:

Count I is dismissed with prejudice as to all defendants; Counts II and III stand as to Sears, but are dismissed without prejudice as to all other defendants; Count IV is dismissed without prejudice as to all defendants; and Count V stands as to all defendants. Plaintiffs' prayer for damages is allowed only as herein stated. Defendants' Motion for More Definite Statement (document no. 23) is denied as moot. Sears' Motion to Strike (document no. 8) is denied.

SO ORDERED.