**SECURITIES AND EXCHANGE COMMISSION, Plaintiff, Appellee,**

v.

**James E. MacDONALD, Jr., Defendant, Appellant.**

**No. 83–1568.**

United States Court of Appeals, First Circuit.

Argued Dec. 5, 1983.

Decided Jan. 11, 1984.

John V. Kenny, Washington, D.C., for defendant, appellant.

Douglas J. Scheidt, Sp. Counsel, Washington, D.C., with whom Daniel L. Goelzer, Gen. Counsel, Linda D. Fienberg, Associate Gen. Counsel, Lisa A. Gok, Atty., S.E.C., and Paul Gonson, Sol., Washington, D.C., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and MALETZ,[*] Senior Judge.

PER CURIAM.

In *SEC v. MacDonald*, 699 F.2d 47 (1st 1983), this court, sitting en banc, affirmed the district court's finding that defendant James E. MacDonald, Jr. violated the anti-fraud provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. The violation involved MacDonald's purchase of 9,600 shares of Realty Income Trust (RIT) stock based on inside information acquired by him in his capacity as chairman of RIT's board of trustees. With respect to the amount of profits

ordered by the district court to be disgorged, a majority of the en banc panel reversed and remanded with instructions to "determine a [disgorgement] figure based upon the price of RIT stock a reasonable time after public dissemination of the inside information." *MacDonald*, 699 F.2d at 55.

Following a trial on remand, the district court ordered MacDonald to disgorge $18,-037.50, together with interest. *SEC v. MacDonald*, 568 F.Supp. 111, 114 (D.R.I.1983). MacDonald now appeals from that order, contending that the appropriate disgorgement figure is closer to $12,000. As viewed by the district court, it was being directed by this court

> to compute the amount of the defendant's ill-gotten gains by determining how much (if any) "paper" profit accrued between the acquisition date and the conclusion of what might be termed the gestation period (the gestation period being the time necessary for the market fully to absorb and act in response to the original inside information once that date has become generally accessible to investors).

568 F.Supp. at 112. We believe that the district court followed this court's mandate conscientiously and correctly. Accordingly, we affirm.

The inside information of which MacDonald availed himself concerned RIT's acquisition of a twenty-five story office building in Cincinnati, and RIT's likely negotiation of a profitable long-term lease of space therein. MacDonald became privy to this confidential information on December 15, 1975. On December 24, 1975, RIT issued a press release publicly announcing for the first time news of the building acquisition. A short article to that effect appeared in The Providence Journal on Christmas day. During the nine-day hiatus between December 15th and December 24th, MacDonald purchased 9,600 shares of RIT stock at a price per share ranging from 4¼ to 4⅝, realizing a profit of over $53,000 on the subsequent sale in 1977.

[*] Of the United States Court of International Trade, sitting by designation.

In determining what a reasonable time was after the inside information had been generally disseminated, this court directed the district court to "consider the volume and price at which RIT shares were traded following disclosure, insofar as they suggested the date by which the news had been fully digested and acted upon by investors." 699 F.2d at 55. In carrying out this directive, the district court found, and the record reflects, that RIT stock customarily traded no more than a few hundred shares daily. In addition, at the time of the events in question, the stock was subject to downward pressure both from earlier pessimistic financial reports and year-end tax selling. Moreover, given the close proximity of the December 24th press release to the Christmas holiday, the district court inferred that the good news would not have reached its designated recipients until several days later. The price of RIT stock steadily rose from 4⅝ to 5⅞ between December 23 and New Year's, peaking on January 9, 1976 at $6.50 per share. It remained there until January 13, declined slightly, and thereafter stabilized for a time at the $6.50 share price.

The district court concluded that it was in this time frame that MacDonald fully realized the benefits of his fraud. For it was then, according to the district court, that the investing public had digested the import of the December 24th press release. The district court thus fixed a price of $6.50 per share as the appropriate yardstick for measuring disgorgement.

The one issue we address on this appeal is whether a December 31, 1975 news article in The Wall Street Journal was an intervening, superseding cause of the RIT stock price surge in early 1976.[1] That article indicated that RIT had received an offer to purchase several of its real estate holdings. It was reported that the deal, if consummated, would result in a $1.7 million capital gain to RIT. Defendant submits that the district court erred in finding that the public had not stopped reacting to the December 24th press release at the time of publication of this Wall Street Journal article.

Under Rule 52(a) of the Federal Rules of Civil Procedure, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The district court's factual findings will be affirmed unless we are left with the definite and firm conviction that a mistake has been committed. *Holmes v. Bateson,* 583 F.2d 542, 552 (1st Cir.1978); *Evans v. United States,* 319 F.2d 751, 753 (1st Cir.1963). The only evidence offered by MacDonald to bolster his contention that the article in The Wall Street Journal was an intervening, superseding cause of the rise in the price of RIT stock was the expert testimony of Robert J. Huckins, a financial analyst. Mr. Huckins testified that the December 31st article "could" have had an effect on the price of RIT stock. This testimony, even if credited by the district court, is insufficient to sustain the proposition proffered by defendant. Indeed, the district court specifically rejected Huckins' testimony that the impact of the December 24th announcement would have dissipated in one to three days. 568 F.Supp. at 114.

Inasmuch as all doubts were to be resolved against defendant on remand, 699 F.2d at 55, and, further, given the wide latitude accorded the district court in evaluating the credibility of witnesses, *Holmes v. Bateson,* 583 F.2d at 552, Fed.R.Civ.P. 52(a), we are unable to conclude that the district court committed clear error in rejecting defendant's argument.[2]

---

1. MacDonald also argues that the rise in the price of RIT stock was due to the general upward trend of the market for real estate investment trusts. In his earlier appeal this court addressed that contention and found that the district court had not committed clear error in rejecting it as the explanation for the rise in the price of RIT stock. 699 F.2d at 50. We, therefore, do not consider this argument again on appeal. *See Raxton Corp. v. Anania Associates, Inc.,* 668 F.2d 622, 623–24 (1st Cir.1982).

2. The district court also found "that it was the Wall Street Journal article of December 31st ... which gained attention for, and brought

Accordingly, for all the foregoing reasons, the judgment of the district court is affirmed.

credibility to, the good news [of December 24th]." 568 F.Supp. at 113. Considering that determinations of this type are more an art than a science, dependent upon a mix of factors for which there are no precise standards or guidelines, the inference drawn by the district court entailed an exercise of judgment which we are not prepared to second-guess on appeal. *Evans v. United States,* 319 F.2d 751, 753 (1st Cir.1963).