John SCARPA, Plaintiff, Appellant,

v.

William MURPHY, et al.,
Defendants, Appellees.

No. 85–1564.

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1986.

Decided Dec. 5, 1986.

Robert Christo with whom Robert Christo & Associates, West Springfield, Mass., was on brief for appellant.

John D. Lanoue with whom J. Norman O'Connor, David B. Mongue and Donovan & O'Connor, Adams, Mass., were on brief for appellees.

Before CAMPBELL, Chief Judge, BROWN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant John Scarpa brought a section 1983 claim against two police officers, defendants-appellees Tierney and Holmes. Scarpa alleged that the two officers deprived him of his civil rights by deliberately and gratuitously striking him on the head with a nightstick, causing a

* Of the Fifth Circuit, sitting by designation.

hearing loss in his left ear. Following a jury-waived trial, the United States District Court for the District of Massachusetts entered judgment for defendants. Scarpa appeals from that decision, claiming chiefly that the district court's findings of fact are clearly erroneous.

## THE EVIDENCE

The events underlying this claim occurred at the Bradley Street Trailer Park in Lee, Massachusetts. On the evening of September 11, 1981, Foster Robertson, an acquaintance of Scarpa, was celebrating his eighteenth birthday in one of the mobile homes in the trailer park. Although the trailer had been repossessed, Robertson and a few of his friends spent the evening there drinking and celebrating boisterously. On several previous occasions during the summer of 1981, neighbors had called the police to complain about loud noise emanating from the Robertson trailer.

At about midnight, Scarpa, then a seventeen-year old high school student, joined the Robertson party. Several neighbors were awakened around 2:00 A.M. by loud noise, music, yelling and banging sounds coming from Robertson's trailer. The partygoers later admitted that they were destroying an interior wall of the mobile home. Two neighbors in the trailer park telephoned the Lee Police Department.

Officers Tierney and Holmes arrived on the scene shortly after 2:00 A.M. Their requests for quiet were met with loud and combative responses from the occupants of the trailer. When Officer Holmes tried to enter the mobile home, he was pushed against the outer trailer wall by Robertson and Michael Martin, another occupant of the trailer. Officer Tierney tried to pull Martin away from Officer Holmes. Failing that, he drew his nightstick and struck Martin in the head. Tierney testified that he had aimed for Martin's chest. The scuffle ended after Holmes, Robertson and Tierney fell off the trailer porch, landing on the ground.

After returning to their vehicles to radio the State Police for backup assistance, the two officers walked back to the trailer porch to apprehend Martin. Officer Holmes took hold of Martin, intending to arrest him. As he began to walk away from the trailer, Holmes was knocked down from behind by Scarpa, who had jumped off the trailer porch onto the officer's back. Scarpa claims he jumped off the porch in order to question Holmes, but miscalculated his leap and landed on the officer's back, knocking him to the ground. Judge Freedman deemed this explanation "highly incredible," finding instead that appellant sought "to batter" Holmes.

Officer Holmes and Scarpa struggled on the ground. Holmes denied intentionally punching at Scarpa's head, but acknowledged he could have struck him there during the fight. The officer eventually managed to subdue and handcuff Scarpa.

Scarpa's witness Foster Robertson testified that at this point Offficer Holmes held Scarpa on the ground while Officer Tierney struck him on the head with a nightstick. Scarpa testified that, after he was handcuffed, he saw Officer Tierney step toward him and "the next thing I know, my head was hurting and I was out." Officers Tierney and Holmes denied using a nightstick on Scarpa. Holmes testified that immediately after handcuffing Scarpa, he moved to assist Tierney, who had just been kicked in the groin by Robertson. Tierney testified that he had been surrounded by three of the youths at the party, and was kicked in the groin just as he was discharging his can of Mace to defend himself from the three youths. Other eyewitnesses corroborated Tierney's claim that he had been surrounded by three of the revelers. Robertson admitted kicking Officer Tierney, but claimed he did so to prevent Scarpa from being struck again.

Scarpa was placed in a state police cruiser and transported to the State Police Barracks, where he was held overnight. He did not complain that he had been hit with a nightstick; nor did he ask for medical treatment. While at the State Police Barracks, however, he did initiate two altercations with State Trooper Rosati in which blows were exchanged. Trooper Rosati

testified that Scarpa had alluded to a fight that had occurred in the trailer before the police arrived. After Scarpa was released at 8:00 A.M. on September 12, he visited his family physician, complaining of hearing loss in his left ear. He was referred to an ear, nose and throat specialist, Dr. Anthony Mangiapane, who concluded that Scarpa had suffered permanent deafness in his left ear.

The district court found that Scarpa had not been hit with a nightstick by either police officer. The court also found that Scarpa's unfortunate loss of hearing could have been caused by a number of factors other than a blow from a nightstick. Finally, the court held that the officers exercised reasonable force in subduing Scarpa and the other youths. Scarpa seeks to have these determinations reversed by this court.

ANALYSIS

Scarpa claims that the district court erred in not finding that he had been hit in the head with a nightstick. We are, of course, bound to accept the district court's factual findings unless they are clearly erroneous. Fed.R.Civ.P. 52(a). A finding is clearly erroneous only if, after reviewing the entire record, the appellate court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *S.E.C. v. MacDonald*, 725 F.2d 9, 11 (1st Cir.1984).

█ A review of the record in this case convinces us that the district court did not err in failing to find that Scarpa had been struck with a nightstick. Foster Robertson, who helped destroy the trailer interior and admitted assaulting Officer Tierney, was the only witness who testified that he actually saw Scarpa hit on the head with a nightstick. Both Tierney and Holmes directly contradicted Robertson's account, specifically denying they had struck Scarpa with a nightstick. Findings based on witness credibility are lodged

firmly in the province of the trial court, and we are loathe to disturb them absent a compelling showing of error. *Anderson v. Bessemer City*, 470 U.S. at 575, 105 S.Ct. at 1512; *Oxford Shipping Co. v. New Hampshire Trading Corp.*, 697 F.2d 1, 5 (1st Cir.1982). No such showing has been made here. The validity of Judge Freedman's finding is bolstered by the fact that neither of two disinterested eyewitnesses, residents of the trailer park who did not attend the Robertson party, testified to actually seeing Scarpa struck with a nightstick.

Scarpa argues that the medical testimony presented at trial demonstrated that his injury could only have been caused by the infliction of a severe blow to the head. He claims this evidence compels a finding that the nightsticking occurred, since that is the only plausible explanation for the severity of the injury he suffered. We reject this argument for two reasons. First, although Dr. Mangiapane stated that appellant would be most likely to have suffered his injury via a "severe blow" to the head, he indicated there were other possible causes of the injury as well, such as a "slight blow." Second, even if a severe blow was the only possible cause of Scarpa's injury, it does not follow that a nightsticking must have occurred. The district court found, and we agree, that Scarpa could have sustained the injurious blow in a fight that reportedly took place in the trailer before the police arrived, during the struggle with Officer Holmes, or during the two altercations that took place in the State Police Barracks between Scarpa and Trooper Rosati. Since Scarpa's injury need not have been caused by a severe blow, and since he could have suffered a severe blow without being struck by a nightstick, the district court concluded that Scarpa had failed to prove his hearing loss had been caused by any unreasonable action of the defendants. We do not find this conclusion to be clearly erroneous.

█ Scarpa's last argument focuses on the degree of force employed by the officers in subduing the youths. Police

officers must not use unreasonable force when apprehending suspects. *Landrigan v. City of Warwick,* 628 F.2d 736, 741–42 (1st Cir.1980). Scarpa asserts that Officers Holmes and Tierney were unreasonable in failing to wait for backup officers before attempting to apprehend Martin. He claims that merely by returning to the trailer porch after the initial scuffle, the officers provoked the second attack upon them by the trailer occupants. He argues that since the officers' "unreasonable" act of returning to the porch provoked the second altercation with the partygoers, the force employed to subdue their assailants was unreasonable. This argument is meritless. The officers did not "provoke" the attack. The officers were attacked while they were trying to do their duty. Officers Holmes and Tierney were not confronting suspects who possessed weapons, nor did the officers have reason to suspect that they would be greatly outnumbered. We will not second-guess their decision to return to the trailer porch without waiting for backup assistance. To have done otherwise could be construed as a shirking of their duty. Even if we did regard their decision to proceed as imprudent, that would not justify Scarpa's jumping onto the back of Holmes; the force used by the officer to ward off Scarpa still would have been reasonable.

*Affirmed.*

 We consider an appeal such as this which turns on credibility findings by the finder of fact to be frivolous. Appellant is, therefore, assessed double costs and attorney's fees of $1,000. Fed.R.App.P. 38.