Nicholas APOSTOL, Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant, Appellee.

No. 86–1884.

United States Court of Appeals, First Circuit.

Submitted Dec. 11, 1987.

Decided Feb. 4, 1988.

As Amended Feb. 11, 1988.

Fernando L. Gallardo and Woods & Woods, Hato Rey, P.R., on brief, for plaintiff, appellant.

Richard R. Stone, Sr., Torts Branch, Civ. Div., Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., and Curtis J. Wilder, Office of Chief Counsel, Federal Aviation Admin., Washington, D.C. on brief for defendant, appellee.

Before BOWNES and SELYA, Circuit Judges, and LAFFITTE,* District Judge.

PER CURIAM.

Nicholas Apostol was injured when the small plane he was piloting crashed shortly after takeoff at San Juan International Airport in San Juan, Puerto Rico. Claiming that the crash was caused by contact with the wake turbulence of a previously depart-

* Of the District of Puerto Rico, sitting by designa-     tion.

ing commercial jet, Apostol sued the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 2671–80. Apostol argued that the airport's air traffic controller was negligent in allowing insufficient time between the departure of the jet and Apostol's plane. After a two-day bench trial, the district court entered judgment for the United States. The court issued a lengthy opinion reported at 641 F.Supp. 642 (1986) which reviewed the evidence and expert opinion in the case and concluded that the crash was not caused by wake turbulence, but by Apostol's own negligence in precipitating a stall. Apostol appealed. We affirm.

■ Apostol's principal argument on appeal is that the district court's judgment is contrary to and unsupported by the evidence adduced at trial. We perceive two prongs to this argument: first, that the district court erred in finding that the crash was not caused by wake turbulence; second, that the court incorrectly found that Apostol did not take off from an intersection,[1] and thus improperly held that, under the applicable regulations, the air traffic controller should have allowed a two-minute separation between takeoffs instead of a three-minute separation. Because both arguments turn on factual findings by the district court, we cannot disturb the district court's judgment unless we find that the court's findings are clearly erroneous. Fed.R.Civ.P. 52(a). "A finding is clearly erroneous only if, after reviewing the entire record, the appellate court 'is left with the definite and firm conviction that a mistake has been committed.'" *Scarpa v. Murphy*, 806 F.2d 326, 328 (1st Cir.1986) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948); *SEC v. MacDonald*, 725 F.2d 9, 11 (1st Cir.1984)).

With regard to the cause of the accident, the most relevant evidence before the dis-

trict court was the testimony of Apostol and two expert witnesses. Apostol testified that, during takeoff, the nose of the airplane pitched upward suddenly, creating a very steep angle of ascent causing the plane to stall. Apostol claimed that he tried to guide the nose down but was unable to do so because the controls were unresponsive. The plane began to drift to the left, he said, and, in order to bring the plane back down safely, he decreased the power. Instead, the wings dipped first to the left and then to the right, and the plane finally crashed about 70 feet off the left side of the runway.

Apostol's contention at trial was that his loss of control was caused by a type of air tubulence known as wing tip vortices. Wing tip vortices are rotating cones of turbulent air created by aircraft wings moving and generating lift. As the court below found, wing tip vortices are generated by all moving aircraft but their strength varies greatly depending on a number of factors, including the aircraft's weight, speed, and angle of incline. And wing tip vortices dissipate over time. Vortices are thus not always dangerous, but, when a small plane takes off shortly after and in the same flight path as a large jet, wing tip vortices can lead to a loss of control and to a crash. *See, e.g., Wasilko v. United States*, 300 F.Supp. 573 (N.D.Ohio 1967), *aff'd*, 412 F.2d 859 (6th Cir.1969) (small plane crash caused by wing tip vortices of previously departing jet).

The two principal expert witnesses in this case were called to testify whether dangerous wing tip vortices, created during the takeoff of the commercial jet that preceded Apostol on the runway, still existed some two and a half to three and a half minutes later when Apostol's plane took off on the same runway. Apostol's expert, Dr. John Bertin, maintained that they did. His conclusion was reached by extrapolating from data collected during studies of wing tip vortices created by planes similar to the commercial jet involved here. Most

---

1. Apostol maintained that an intersection is any place where a taxiway meets the active runway. The district court found that the point from which Apostol departed, although technically such an intersection, was not an intersection for air traffic control purposes because it was within 500 feet of the threshold of the runway.

of the studies to which he referred measured the wing tip vortices of airplanes while in flight. The government's expert on the same subject was Dr. James Hallock, a scientist who had himself supervised a number of studies on wing tip vortices. Contrary to Bertin, it was Hallock's testimony that wing tip vortices played no part in Apostol's crash. Hallock pointed out that the vortices created by airplanes rolling on the ground prior to takeoff dissipate rapidly because of contact with the ground. Hallock had determined by a series of tests that pretakeoff vortices from even the largest airplanes never lasted more than thirty seconds. Hallock then noted the uncontradicted evidence that Apostol's plane took off approximately 1000 feet down the runway and crashed at a point about 1900 feet down the runway, while the previous plane still had its wheels on the ground more than 3000 feet down the runway. Hallock thus concluded that any vortices encountered by Apostol's plane were generated by the previous jet while still on the ground. Further, even according to Apostol's least generous contention, well over two minutes elapsed between the departure of the previous plane and that of Apostol.[2] Therefore, Hallock concluded, Apostol's plane encountered no wing tip vortices.

In finding for the government on the issue of causation, the district court obviously chose to credit the testimony of Hallock over Bertin. "Findings based on witness credibility are lodged firmly in the province of the trial court, and we are loathe to disturb them absent a compelling showing of error." *Scarpa*, 806 F.2d at 328. *See also Oxford Shipping Co. v. New Hampshire Trading Corp.*, 697 F.2d 1, 5 (1st Cir.1982). There is nothing inconsistent or inherently incredible about Hallock's testimony which would lead us to discredit it on appeal. Indeed, because Hallock based his opinion on studies he personally supervised rather than extrapolating from other persons' studies, and because Hallock

focused on pretakeoff rather than in-flight vortices, Hallock's testimony seems inherently *more* credible than Bertin's. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985). We affirm the district court's conclusion that Apostol's crash was not caused by turbulence from the previously departing jet.

Having so ruled, we find it unnecessary to address Apostol's arguments regarding the district court's application of a two-minute separation rule instead of a three-minute separation rule. As the district court found, and we affirm, more than enough time actually elapsed between takeoffs to insure that Apostol did not encounter wing tip vortices from the prior jet. It is simply irrelevant whether the air traffic controller was bound by but did not comply with a three-minute rule, or was otherwise negligent in authorizing takeoff, because such negligence, if it existed, was not the cause of the crash and cannot give rise to government liability.[3]

The court's conclusion that the crash was caused by Apostol's own negligence in stalling the plane is amply supported by the record. A government expert on piloting small planes testified that, based on the evidence concerning Apostol's handling of the plane during takeoff, he believed Apostol had simply taken off at too great an angle of incline with too little airspeed and precipitated a stall. The stall was aggravated when Apostol decreased power, the expert said, causing the loss of control and the crash.

Apostol makes two subsidiary arguments, neither of which merits lengthy

---

**2.** The district court found that the planes were separated by three minutes and five seconds, and there is ample evidence in the record to support this finding.

**3.** 28 U.S.C. § 1346(b) provides that the substantive law of the place where the crash occurred

governs Apostol's claim. Like the law of other jurisdictions, the Puerto Rico statute governing negligence claims provides that liability lies only where a negligent act "causes damage to another." P.R.Laws Ann. tit. 31, § 5141.

discussion. First, Apostol claims that the district court erred in excluding from evidence the deposition of Frank McDermott, Apostol's proffered air traffic control expert. Although deposed, McDermott was unable to testify at trial and Apostol moved to have the deposition admitted in lieu of trial testimony. A "trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *accord United States v. Hoffman,* 832 F.2d 1299, 1310 (1st Cir. 1987); *Marshall v. Perez Arzuaga,* 828 F.2d 845, 851 (1st Cir.1987); *United States v. Ferreira,* 821 F.2d 1, 5 (1st Cir.1987). We find no abuse of discretion here. To be able to testify as an expert under Federal Rule of Evidence 702, a witness must be qualified through "knowledge, skill, experience, training, or education." Apostol utterly failed to include in the deposition any testimony qualifying McDermott as an expert. Indeed, the only testimony regarding McDermott's qualifications revealed that he had not controlled an airplane since 1953, a time at which wake turbulence avoidance procedures were not in effect, and that he had never issued a wake-turbulence-avoidance instruction.[4] Moreover, even if McDermott were qualified and his deposition testimony should have been admitted, a conclusion we in no way endorse, the district court's refusal to admit the deposition would not be grounds for reversal or new trial. McDermott's deposition dealt only with the duties of an air traffic controller in a wake turbulence situation, his opinion being that the controller in this case was negligent. As already stated, however, we uphold the district court's conclusion that the crash was not caused by wake turbulence and, thus, that the controller's negligence, if any, was irrelevant.

Apostol's last argument is that the district court erred in failing to conduct a visual inspection of the airport and crash site. Apostol's apparent concern is that the district judge in this case, a licensed pilot, used "preconceived ideas" about the airport instead of relying on evidence introduced at trial. Without citing any authority whatsoever, Apostol argues for reversal because "justice would have been better served with a non-pilot judge." There is ample evidence in the record, including maps, charts and Apostol's own testimony, to have given the district court a full understanding of the physical layout at San Juan International Airport. We find no basis for Apostol's assertion that the district court did not, in fact, rely on this evidence. Further, it goes almost without saying that the decision whether or not to conduct an out-of-court view is peculiarly within the trial court's discretion. *See, e.g., Stokes v. Delcambre,* 710 F.2d 1120, 1129 (5th Cir.1983); *Northwestern Nat. Cas. v. Global Mov. & Stor. Inc.,* 533 F.2d 320, 323 (6th Cir.1976); *cf. Szeliga v. General Motors Corp.,* 728 F.2d 566, 567 (1st Cir.1984) ("The question of permitting the showing of a motion picture film is one for the sound and broad discretion of the district court."). Apostol's claim is meritless.

As we have said previously, "[w]e consider an appeal such as this which turns on credibility findings by the finder of fact to be frivolous." *Scarpa v. Murphy,* 806 F.2d 326, 329 (1st Cir.1986). As in *Scarpa,* Apostol "is, therefore, assessed double costs and attorney's fees of $1,000. Fed.R. App.P. 38." *Id.*

*Affirmed.*

---

4. Apostol attempts to overcome his lack of proof on McDermott's qualifications by pointing to cases where McDermott had previously testified as an expert. *See, e.g., Wasilko v. United States,* 300 F.Supp. 573 (N.D.Ohio 1967), *aff'd,* 412 F.2d 859 (6th Cir.1969). We find no indication in the record that this argument was presented to the district court, and Apostol has provided no legal support for the remarkable proposition that a court is bound to qualify as an expert someone who testified as an expert in other cases. If the court had referred to those cases cited by Apostol where McDermott previously testified, we assume the court would also have referred to and been equally persuaded by *First of America Bank–Central v. United States,* 639 F.Supp. 446, 462 (W.D.Mich.1986), a more recent case where a district court thoroughly discredited McDermott's testimony because of his lack of experience in air traffic controlling.