Manchester Mfg. Acquisitions v. Sears CV-91-752-SD  10/19/95

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Manchester Manufacturing
 Acquisitions, Inc., et al.


        v.                                Civil No. 91-752-SD


Sears, Roebuck & Co., et al.


O R D E R


     This order addresses the issues raised by a plethora of
pending pretrial motions.


1.  Joint Motion to Dismiss Pursuant to Stipulation of Settlement
and for Entry of Protective Order, document 105

     The plaintiffs have entered into a Stipulation of Settlement
with the defendant Sears, Roebuck & Co. (Sears).  Together with
Sears, they here seek, by medium of the instant motion, to have
the settlement approved, Sears terminated from the action, and a
protective order entered preserving the confidentiality of the
settlement.

     The codefendants, Dylex Limited, Dylex (Nederland) B.V.,
293483 Ontario Ltd., Harold R. Levy, Mac Gunner, and Estate of
Kenneth Axelrod (hereinafter "the nonsettling defendants")

object.  Document 109.[1]  The dual grounds of the objection advanced are (1) the fairness of the settlement and (2) its encouragement of litigation.

In its order of September 26, 1995, the court, inter alia, granted that portion of defendants' motion for summary judgment which sought dismissal of Count II of the plaintiff's second amended complaint.  Document 111, at 4-9.  This ruling served to remove from this case any remaining claims of plaintiffs which were grounded on any federal securities laws.  Only state law claims currently remain for resolution.

In such circumstances, the nonsettling defendants are not, as they originally argued, entitled to a judicial hearing on the "fairness" of the Sears settlement.  This is so because state law alone "governs the parties' contribution rights."  In re Atlantic Financial Mgt., Inc., Securities Litigation, 718 F. Supp. 1012, 1015 (D. Mass. 1988).  That law is set forth in New Hampshire Revised Statutes Annotated (RSA) 507:7-h (Supp. 1994), which provides:

> A release or covenant not to sue given in good faith to one of 2 or more persons liable in tort for the same injury discharges that person in accordance with its terms and from all liability for contribution, but it does not discharge any other person liable upon

---

[1]Sears has also filed a "reply" to the defendants' objection.  Document 110.

the same claim unless its terms expressly so provide. However, it reduces the claim of the releasing person against other persons by the amount of the consideration paid for the release.

As with its precedessor statute, RSA 507:7-h, <u>supra</u>, requires that the release at issue be "given in good faith." <u>See</u> <u>Simonsen v. Barlo Plastics Co.</u>, 551 F.2d 469, 472-73 (1st Cir. 1977). The settlement here arrived at between plaintiffs and Sears was the result of two separate full days of mediation conducted at two separate locations. Its consummation was negotiated at "arm's length" and for "a substantial sum." Moreover, it was entered into well in advance of trial and cannot be described as a collusive settlement designed to shift the burden of damages. The court finds that the settlement between plaintiffs and Sears complies with the requirement of "good faith" which is directed by the statute.

Nor is there legal merit to the complaint of the nonsettling defendants that the settlement encourages litigation. With the exception of those rare cases where "'litigious strife is sought to be promoted, the rule against champerty and maintenance is not now in force in this jurisdiction.'" <u>Ladd v. Higgins</u>, 94 N.H. 212, 215 (1946) (quoting <u>Markarian v. Bartis</u>, 89 N.H. 370, 375 (1938)). The settlement stipulation itself, no more than a so-called high/low, in itself a commonly employed and routinely

3

approved settlement tactic, is not of such ilk.

Accordingly, the plaintiffs' motion is granted, and the court herewith orders:

1. That the settlement agreement is herewith approved;

2. That the court finds, pursuant to the provisions of RSA 507:7-h, *supra*, that the defendant Sears, Roebuck & Co. is discharged in accordance with the terms of the settlement agreement from all liability for contribution to the nonsettling defendants;

3. That the court further finds that the settlement agreement does not discharge any of the nonsettling defendants from liability;

4. That the court herewith finds and states that the settlement agreement and its terms are to remain confidential, under seal, and are not to be disclosed to any third parties, except as required by law or within the context of the continued prosecution of this lawsuit, or as necessary in connection with any legal financial or accounting services being performed for the settling parties; and

5. That the claims of plaintiffs Manchester Manufacturing Acquisitions, Inc., Gary A. Dinco, and Felix J. Weingart, Jr., against defendant Sears, Roebuck & Co. are herewith dismissed with prejudice and without costs.

4

## 2. Plaintiffs' Motion in Limine (Settlement with Sears, Roebuck & Co.), document 106

Conditioned upon the ruling just hereinabove made (i.e., approval of the settlement between plaintiffs and Sears), the instant motion seeks to have the court give a jury instruction to the effect that Sears was, but no longer is, a party to this litigation. The defendants have objected to the proposed instruction attached to the plaintiff's motion, and have in turn suggested a substitute instruction. Document 118. In replication, and in an attempt to satisfy the defendants, the plaintiffs have further refined the proposed instruction, attaching a third alternative to their replication. Document 140.

Upon review of all of the propositions, the court finds and rules that the proposed instruction attached to the defendants' replication is that which best suits the needs and requirements of the trial herein, and accordingly will give such instruction to the jury. The motion in limine is granted to this extent.

## 3. Motion in Limine (Forbearance Agreement), document 107

In December 1991 the plaintiffs, who were then defendants in certain collections actions brought against them by their lenders, entered into a forbearance agreement, so-called, with

5

said lenders.  Document 107, Exhibit A.  Seeking to bar introduction by defendants of this document into evidence, plaintiffs invoke the provision of Rules 401[2] and 403,[3] Fed. R. Evid.  Defendants object.  Document 112.

The "consequential facts" in this litigation are those concerning (1) the liability, if any, of the nonsettling defendants to the plaintiffs and (2) if liability of the nonsettling defendants is proven, the amount of damages to be awarded as a result thereof.  The identity of the party or parties to whom the damages are to be paid is not a "consequential fact" within the meaning of Rule 403, Fed. R. Evid.

Accordingly, the forbearance agreement will not be admitted in evidence, and defendants are instructed to refrain from inquiry into its terms and to instruct their witnesses to avoid mention of the forbearance agreement or to attempt in any to

---

[2]Rule 401, Fed. R. Evid., provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3]Rule 403, Fed. R. Evid., provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

6

bring the forbearance agreement before the jury.

However, without going into the details of the forbearance agreement, defendants will be allowed to examine witnesses employed by the lenders as to the fact that, by terms of an agreement between the lenders and plaintiffs, the lenders are to receive a portion of any damages awarded plaintiffs in this lawsuit. No more is required or should be sought by the defendants from such witnesses. The motion is granted in part as hereinabove outlined.

4. Defendants' Motion in Limine to Bar Introduction of a Tape Recording of Defendants Gunner and Levy, the Transcript of the Same, and to Bar the Testimony of John Georges, document 113

On October 5, 1991, one John Georges, an investigator retained by plaintiffs, met with defendants Harold Levy and Mac Gunner at the defendants' office in Montreal, Province of Quebec, Canada. Georges interviewed the defendants, making use of a tape recorder.

Defendants, contending that use of the tape recorder, any transcript thereof, or indeed any testimony by Mr. Georges concerning the interview, would be in violation of New Hampshire law, seek to bar the recording, any transcript thereof, and any testimony by Mr. Georges. The plaintiffs object. Document 124.

The New Hampshire statute entitled "Wiretapping and Eavesdropping", RSA 570-A (& Supp. 1994), which bars electronic recordings of the type here made, would not have application to any federal securities law claims were such claims still viable. See United States v. Upton, 502 F. Supp. 1193 (D.N.H. 1980). This is so because the tape at issue would clearly be admissible under the federal statute, 18 U.S.C. § 2511, et seq. Boddie v. American Broadcasting Cos., Inc., 694 F. Supp. 1304 (N.D. Ohio 1988), aff'd, 881 F.2d 267 (6th Cir. 1989), cert. denied, 493 U.S. 1028 (1990).

Most importantly, however, Canadian law permits recordings of the type here made by Mr. Georges. As residents of Canada, the defendants cannot be here heard to complain of a procedure which occurred in Canada and was authorized by the law of that country. See United States v. Barona, 56 F.3d 1087 (9th Cir. 1995) (wiretap conducted in Denmark and authorized by law of that country admissible in prosecution in United States).

The court finds unpersuasive the argument of defendants that the "effect" of RSA 570-A is such that it necessarily overrides the fact that the taping at issue was authorized by Canadian law. The motion in limine is denied, and the tape and testimony of Mr. Georges will be admissible at trial herein.

8

## 5. Plaintiffs' Motion to Require In-Court Testimony or Nonstenographic Deposition of Arthur Pepperman, document 114

The deposition of Arthur Pepperman, then resident in Williamsburg, Virginia, was taken in that place on March 9, 1995. Apparently Mr. Pepperman has now taken up residence in Moultonboro, New Hampshire, and plaintiffs accordingly move to bar the use of his deposition as he is within subpoena range and able to be required to appear live at trial. Alternatively, plaintiffs suggest that a nonstenographic deposition (apparently videotape) be utilized.

As Rule 32(a)(3) makes clear, where a witness is within 100 miles from the place of trial, the party desiring to utilize testimony of such witness should first issue a subpoena before attempting to make use of the deposition of the witness. However, here, in their response, defendants have agreed that they will issue a subpoena to require Mr. Pepperman to appear live at trial. Document 133. This response therefore moots the relief suggested by plaintiffs in their motion.

## 6. Plaintiffs' Motion in Limine (Testimony of Russell Thibeault), document 115

Sears earlier designated Russell Thibeault, a New Hampshire economist, as an expert witness. The nonsettling defendants have

indicated an intent to call Mr. Thibeault to testify in their behalf. Plaintiffs move to bar such testimony. Sears joins with a memo in support of plaintiffs' motion. Document 126. The defendants object. Document 119.

Initially, the court rejects any argument that the testimony of Mr. Thibeault falls within the parameters of the "work product" of Sears' attorneys. 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2029, at 419 (West 1995). Nor does the proposed testimony of the witness as contrasted to the discovery of the scope of such testimony fall within the "exceptional circumstances" requirement of Rule 26(b)(4)(B), Fed. R. Civ. P., as such rule has no application in a context where, as here, the witness has already been previously deposed. Rubel v. Eli Lilly & Co., 160 F.R.D. 458, 460 (S.D.N.Y. 1995).

Nor does the court view with alarm the possible "explosive fact" that might arise from a showing that Thibeault was initially retained as an expert by Sears. 8 WRIGHT, MILLER & MARCUS, supra, § 2032, at 447. As the jury is to know that Sears was once a party to this litigation, it will not be surprised to know that it had earlier retained an expert whose opinions differed from the theories advanced by plaintiffs.

Accordingly, as defendants are willing to pay Mr. Thibeault's fees and expenses for his preparation and testimony

10

at trial, the court finds and rules that he can be called to testify in behalf of the defendants. The motion in limine is accordingly denied.

7.  The Motion in Limine or in Alternative for Stipulation of Fact (Minutes of Dylex Limited and Dylex (Nederland) B.V.), document 116

In the course of pretrial preparations, plaintiffs requested and defendants supplied copies of all available minutes of the board of directors of the defendants Dylex Limited and Dylex (Nederland), B.V.  Plaintiffs' motion accordingly seeks to have the court order or have counsel for defendants stipulate that there presently exist no other minutes of directors' meetings of these entities.

In their response, defendants affirm that the board minutes which have been produced, and no others, comprise all of the board minutes responsive to plaintiffs' discovery request, of which defendants' counsel is aware, and that such records were in fact produced after completion of a diligent record search. Document 131.  Accordingly, the motion is granted, and the court deems that defendants have stipulated that all of the records heretofore produced comprise the complete records which defendants were able to find after a diligent record search.

## 8.   Plaintiffs' Motion in Limine (Statements by a Coconspirator) (document 117)

Invoking the hearsay exception for testimony of a coconspirator, Rule 801(d)(2)(E), Fed. R. Evid.,[4] but without stating factual details thereof, plaintiffs claim the right to offer into evidence statements by defendants and/or their directors, officers, employees, and agents as probative not only on the fraudulent acts of the individual defendants but, as well, on the fraudulent nature of the joint undertaking to be used against all defendants.   Defendants object.   Document 130.

> "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose . . . ." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47, 534 A.2d 706, 709 (1987).   Its essential elements are: (1) two or more persons (including corporations); (2) an (unlawful) object to be accomplished; (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages proximately resulting from the acts.

---

[4]Rule 801(d)(2)(E), Fed. R. Evid., provides:

> **(d) Statements which are not hearsay.**   A statement is not hearsay if--
>    . . . .
>    (2) . . . the statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

12

University System of N.H. v. United States Gypsum, 756 F. Supp. 640, 652 (D.N.H. 1991). "For a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit." Id.

Defendants suggest a pretrial hearing on admissibility of the alleged coconspirators' statements prior to the commencement of trial or, alternatively, that plaintiffs be required to produce their nonhearsay evidence before attempting to introduce the hearsay statements of alleged coconspirators. The court, exercising its discretion so to do, Earle v. Benoit, 850 F.2d 836, 841 (1st Cir. 1988), adopts the latter alternative.

Accordingly, plaintiffs are instructed that, prior to attempting to introduce the hearsay statements of alleged coconspirators, they are to produce all nonhearsay evidence bearing on the issue which is supported by such hearsay testimony. When they reach the point at which they desire to introduce the hearsay evidence, they are to approach the bench in order that the court might take up without the hearing of the jury any objection then interposed to the introduction of such testimony.

In the event the court finds that the proposed testimony falls within the coconspirator exception of Rule 801(d)(2)(E),

13

<u>supra</u>, it will conditionally admit such testimony, informing the parties that the plaintiffs will be required to prove by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members of it at the time that the declaration was made, and that the declaration was in furtherance of the conspiracy, and that at the close of all the evidence the court will make a final determination for the record, out of the hearing of the jury, and that if the determination is against admitting the declaration, the court will give a cautionary instruction to the jury or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice. <u>United States v. Ciampaglia</u>, 628 F.2d 632, 638 (1st Cir. 1980). The court will also give such limiting instructions as are necessary at the time any coconspirator evidence is introduced.

The motion in limine is granted to the extent hereinabove set forth.


## 9. Plaintiffs' Motion in Limine (Bankruptcy of Dylex Limited & Dylex (Nederland) B.V.), document 120

Defendants Dylex Limited and Dylex (Nederland) B.V. have apparently filed for bankruptcy proceedings in Canada.

14

Plaintiffs' motion contends that as the current bankruptcy status of these entities is not "a consequential fact", <u>see</u> Rule 401, Fed. R. Evid., <u>supra</u> note 2, the defendants should be instructed to refrain from mentioning the bankruptcy to the jury.

While defendants concede in their response that the bankruptcy of the defendants should not be at issue, they contend that the plaintiffs should also be barred from portraying defendant Dylex Limited as a large corporate conglomerate or multi-national corporation. Document 138. By their replication, plaintiffs counter this argument, suggesting that the fact of the multi-national operations of Dylex Limited as a conglomerate is relevant to the issues of agency, partnership, and scienter, which are all elements of plaintiffs' case. Document 141.

With reference to such argument, it appears that the jury need know no more than that Dylex Limited and Dylex (Nederland) B.V. at relevant times held ownership of Manchester Manufacturing, Inc., and that they operated their businesses through various agents, servants, and employees, whose actions in the scope of employment would be binding upon the defendants. With this exception, the court herewith grants the motion in part, but instructs the parties and all their counsel not to mention, refer to, interrogate concerning, or attempt to convey

15

to the jury in any manner, either directly or indirectly, any facts regarding any defendants' pecuniary resources, including, but not limited to, evidence of defendants' wealth, bankruptcy, property and business, or the extent and size of defendants' business, or characterizing defendant Dylex as a conglomerate without first obtaining permission of this court outside the presence and hearing of the jury, and further instructs the parties and their counsel to warn and caution each and every one of their witnesses to strictly follow these instructions.

10. Plaintiffs' Motion to Amend Pretrial Statement to Identify Additional Witness (Records Custodian, Sears, Roebuck & Co.) or, in the Alternative, for Stipulation of Fact by Counsel, document 121

With Sears out of this case, plaintiffs seek to add a record custodian to identify documents previously identified in the course of discovery or, alternatively, to have the authenticity of such documents stipulated to by counsel. In response, defendants, while not denying that the business records produced are records of regularly conducted business activity which are authentic, seek to reserve their right to object to certain of the records on the grounds that they may fall within the bar of

16

hearsay or relevance or other proper objection.  Document 137.
Plaintiffs have filed a replication, setting forth a proposed
stipulation which appears to the court to meet the objections of
the defendants.  Document 139.

Accordingly, it is herewith stipulated by and between the
parties as follows:

All records previously produced by Sears, Roebuck & Co.;
Dylex Limited; Dylex (Nederland) B.V.; Manchester Manufacturing,
Inc.; Manchester Manufacturing Acquisitions, Inc.; Felix
Weingart, Jr.; Gary Dinco; Mac Gunner; Harold Levy; the United
States Small Business Administration; Northern Community
Investment Corporation; First New Hampshire Bank; Caldwell
Banker; and V.R. Business Brokers are all authentic business
records.  The parties, however, reserve the right to object to
the admission of those records on other grounds, including but
not limited to relevancy, hearsay within hearsay, etc.


11.  Plaintiffs' Motion in Limine (Dying Declaration of Kenneth
Axelrod), document 122

The Estate of Kenneth Axelrod is a defendant in this
litigation.  In November 1993 plaintiffs' counsel was advised
that decedent's nephew and executor, Allan Axelrod, had been told

17

by the decedent prior to the decedent's death that decedent had expressly warned the plaintiffs Gary A. Dinco and Felix J. Weingart, Jr., "against the purchase of MMI because he could not guarantee that Sears business would continue."  Letter of Steven J. Kantor, Esq., Nov. 9, 1993, to Randall F. Cooper, Esq. (attached to document 122).

Plaintiffs seek exclusion of any testimony to this effect from Allan Axelrod on the ground that it is inadmissible hearsay, Federal Rule of Evidence 801(c), and is not within the dying declaration exception of Federal Rule of Evidence 804(b)(2).[5]  In response, the defendants concede that the purported statements are not within the dying declaration exception, but contend that they are admissible within the residual hearsay exception

_____

[5]Rule 804(b)(2) provides:

> **(b) Hearsay exceptions.**  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>      . . . .
>      **(2) Statement under belief of impending death.**  . . . in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

18

detailed in Federal Rule of Evidence 803(24).[6]  Document 132.

The conditions of admissibility under Federal Rule of Evidence 803(24) require that the court determine five express requirements to have been satisfied.  M. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6775, at 736 (interim ed.) (West 1992).  These requirements are: (1) equivalent trustworthiness; (2) necessity; (3) material fact; (4) satisfaction of purpose of rules; (5) notice.  Id. at 737-46; see 4 WEINSTEIN'S EVIDENCE ¶ 803(24)[01], at 803--430-442 (Matthew Bender & Co. 1995).

---

[6]The residual hearsay exception of Rule 803(24) states:

> **Other Exceptions.**  A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

19

While it here appears that it would not be difficult for the defendants to establish the elements numbered 3 through 5 above, the court finds and rules that it is impossible to determine within the parameters of a motion in limine the requirements of (1) equivalent trustworthiness and (2) necessity. The factors which bear on the establishment of trustworthiness include (1) the declarant's partiality, i.e., interest, bias, corruption, or coercion, (2) the presence or absence of time to fabricate, (3) suggestiveness brought on by the use of leading questions, and (4) whether the declarant has ever recanted or reaffirmed the statement. M. GRAHAM, supra, at 740. Corroborating evidence establishing the truth of the matter asserted by the declarant in the statement may not be considered. Id. at 740 (citing Idaho v. Wright, 497 U.S. 805 (1990) (emphasis in original). As regards the requirement of necessity, the issue is whether the proffered hearsay is more probative on the point for which offered than any other evidence which the proponent may reasonably procure. Id. at 472. Whether a particular effort to obtain alternative proof of a matter may reasonably be demanded must, of course, depend upon the fact at issue considered in light of its posture in the total litigation. Id. at 742-44.

Accordingly, when the defendants wish to present the

20

testimony of Allan Axelrod, they are to relay that information to the court in advance of the proposed testimony. The jury will be excused, and Allan Axelrod will be allowed to testify without their presence. He will be subject to cross-examination, and at the conclusion of all examination the court will rule as to whether the disputed statement of the decedent is admissible pursuant to Rule 803(24), Fed. R. Evid.

The ruling on the motion in limine is necessarily deferred until the court is able to hear the testimony of Allan Axelrod presented in the manner hereinabove directed.

## 12. Plaintiffs' Motion in Limine (Use of Leading Questions), document 123

Invoking Federal Rule of Evidence 611(c),[7] plaintiffs move to be allowed to call as witnesses and interrogate by medium of leading questions defendants and employees of defendants,

---

[7]Federal Rule of Evidence 611(c) provides:

> **Leading questions.** Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

21

including the former defendant Sears. The motion also seeks to limit questioning by defendants of any such witnesses to direct examination.

The defendants concede that plaintiffs should be allowed to make use of leading questions in the course of examination of any defendants or persons identified with the defendants, but challenge the attempt to limit their questioning of such witnesses to direct examination, contending that the complexities of the case are such that they may in turn have to proffer leading questions. Document 134.

The court is satisfied that plaintiffs should be permitted to pose leading questions to the defendants and their agents, servants, and employees. Clearly, witnesses in such a category have a "built-in incentive to slide away from the question or slant the answer." Rodriquez v. Banco Central Corp., 990 F.2d 7, 13 (1st Cir. 1993).

As to any witnesses identified with Sears, a former defendant, it appears that the rulings on the type of question to be posed to such witnesses should await some demonstration "that the witness's demeanor in response to nonleading questions reveals the witness is biased against the direct examiner, his client, or both." WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE

22

§ 6168, at 426-27 (West 1993).

Finally, the court will not bar the defendants from the use of leading questions at this stage of the proceedings. Contrary to plaintiffs' suggestion, Federal Rule of Evidence 611(c) does not mandate such a policy. Indeed, in the case cited and relied upon by plaintiffs, Alpha Display Paging, Inc. v. Motorola Communications & Electronics, Inc., 867 F.2d 1168 (8th Cir. 1989), the defendant was permitted to pose leading questions in the course of cross-examination of one of its own employees who had been called by the plaintiff as a witness identified with an adverse party. Id. at 1171. As Rule 611(c) is "arguably subject to the overriding command of Rule 611(a)," Rodriguez, supra, 990 F.2d at 13, the court must defer judgment on the issue until questions which plaintiffs deem objectionable are presented at trial.

Plaintiffs' motion is granted in part; that is, plaintiffs may be allowed to interrogate defendants and parties identified with defendants by means of leading questions. The use of leading questions by plaintiffs when interrogating parties identified with Sears and the use of leading questions by defendants when interrogating witnesses identified with defendants and with Sears will be ruled upon when the questions

23

are submitted and objections are interposed in the course of trial.

## 13. Plaintiffs' Motion in Limine (Privileged Material), document 127

This motion, to which no written objection has been interposed, seeks to bar defendants from using certain documents originally sought by Sears in a motion to compel. The documents include certain communications with the Small Business Administration (SBA), an alleged analysis of plaintiffs' case "inadvertently" left in the office of Jack Ketchum, and documents held by the NCIC.

Although Sears' motion to compel has been mooted by their settlement with the plaintiffs, the plaintiffs fear that defendants will attempt to make use of some or all of these documents which plaintiffs claim to be confidential. The plaintiffs' motion is granted to the extent that defendants and their counsel are instructed not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner, directly or indirectly, the documents hereinabove referred to or the circumstances surrounding their disclosure to the persons identified without first obtaining permission of this

24

court outside the presence and hearing of the jury, and defendants and their counsel are further instructed to warn and caution each and every one of their witnesses to strictly follow these instructions.

## 14. Defendants' Motion in Limine to Bar the Testimony of Plaintiffs' Experts, document 135

Plaintiffs have retained Mark H. McKinsey, Alan S. McCausland, and Jack S. Ketchum as expert witnesses. Defendants, having deposed these witnesses, seek to bar their testimony. Plaintiffs' object. Document 146.[8]

In this circuit, the

> "gatekeeping function" contemplated by Rule 702 [Fed. R. Evid.] essentially requires the trial judge to assess whether it is "reasonably likely that the expert possesses specialized knowledge which will assist the trier better to understand a fact in issue." [United States v.] Sepulveda, 15 F.3d [1161,] 1183 [(1994)] (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, 113 S. Ct. 2786 (1993) (emphasis added); Apostol v. United States, 838 F.2d 595, 599 (1st Cir. 1988) (noting that Rule 702 rulings invite a "case specific inquiry").

---

[8]For reasons unclear, document 146 is actually the plaintiffs' memorandum of law in support of their objection. The objection itself, together with other documents, is attached to the memorandum.

United States v. Alzanki, 54 F.3d 994, 1005, 1006 (1st Cir. 1995).  Under Daubert, the trial judge must ensure "'that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' 113 S. Ct. at 2799." Vadala v. Teledyne Indus., Inc., 44 F.3d 36, 39 (1st Cir. 1995).

Because of the case-specific inquiry that must be made in gauging the issue of admissibility of expert testimony, the court is unable to rule on the instant motion on the basis of the record before it.  If upon presentation of direct and cross-examination of plaintiffs' experts it appears that "the opinions advanced by an expert rest on a wholly inadequate foundation, the judge, on timely motion, may strike the testimony." United States v. Sepulveda, 15 F.3d 1161, 1183 (1st Cir. 1993), cert. denied, 114 S. Ct. 2714 (1994).

The court's examination of the written expert reports and resumes of Messrs. McKinsey, McCausland, and Ketchum enforce the wisdom of such approach.  It appears that Mr. McKinsey has substantial knowledge in corporate management and affairs such that he might well be qualified to state the opinions of which the defendants complain.  Moreover, it is not clear at this stage of the proceedings whether the gross profits approach made by Mr. McCausland is inadmissible on the issue of damages.  Finally, it

26

appears that defendants complain only of a small portion of Mr. Ketchum's report, which concerns loss of income to Mr. Dinco and Mr. Weingart. Apparently, plaintiffs concede that this approach to lost income of the individual plaintiffs is only an alternative and concede that the individual plaintiffs may not duplicate any damages awarded to the corporate plaintiff.

Accordingly, the motion is herewith denied. The court will rule on the admissibility of expert testimony at the conclusion of examination by all counsel, and if the circumstances then require such testimony be stricken, it will be stricken with a firm instruction to the jury to disregard such testimony.

## 15. Defendants' Motion in Limine to Bar Introduction of Deposition Exhibit No. 117 (SRC 00517-18), document 136

The document of which defendants complain is a memo from Susan Mayo, a Sears employee, to Mr. Duffy, another employee of Sears. Defendants contend that it is full of hearsay and thus should be barred from admissibility. Plaintiffs object, making an extensive offer of proof. Document 142.

As with all other objections to documentary exhibits, the court is going to defer ruling on this motion until the actual time of proffer of the exhibit at trial. All exhibits to which

objections are interposed are to be marked for identification only, and their admissibility will be taken up as the respective parties desire to proffer the exhibit into evidence.

16.  Plaintiffs' Motion in Limine (Expert Reports and Testimony of Stafford Young and Kip Kimble), document 144

Inasmuch as defendants did not timely identify either Mr. Young or Mr. Kimble as experts, they will not be allowed to testify as such at the trial concerning their appraisals.  No mention should be made of such appraisals, nor should any attempt be made to put their contents before the jury.

The plaintiffs seek to make a limited proffer of the Kimble report (Plaintiffs' Exhibit 76) to establish an operative fact of fraud, but the court herewith rules that, if admitted for any purpose, this report should be admitted for all purposes, and accordingly understands that the plaintiffs withdraw such proffer of the exhibit.  With the exception of denial of such proffer, the plaintiffs' motion is herewith granted, and the defendants and their counsel are herewith instructed to refrain from introducing into evidence any expert opinions as to the real estate value of the MMI real property as issued by Mr. Kimble or Mr. Young, whether offered by way of direct or deposition

28

testimony or through any other witness, that all mention of values established by these appraisals are to be redacted from any and all exhibits in which same is noted, and defendants and their counsel are not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner, directly or indirectly, the amount of these real estate appraisals without first obtaining permission of this court outside the presence and hearing of the jury, and counsel and the parties are instructed to warn and caution each and every witness to strictly follow these instructions.

17.  Objections to Exhibits, documents 143 and 147[9]

As earlier indicated in the course of this order, the court will defer ruling on objections to proffers of exhibits until the time comes for such proffer to be made at trial.  Any exhibits to which objections have been interposed are to be marked for identification, and the court will rule on their admissibility when actual proffer at trial is made.

---

[9]Document 143 comprises the plaintiffs' objection to defendants' exhibits, while document 147 comprises the defendants' objection to plaintiffs' exhibits.

## 18. Plaintiffs' Motion in Limine (Extensions of Time for Opening Statement and Closing Argument), document 145

Local Rule 33(c) ordinarily limits opening statements to 30 minutes, and subsection (g) of said rule ordinarily limits closing argument to one hour. Plaintiffs here seek to extend these respective times to 90 minutes for the opening statements and 120 minutes for the closing arguments.

The court will grant each of the parties up to 60 minutes for opening statements and up to 90 minutes for closing arguments, but no further extensions of time will be allowed. The motion is accordingly granted to this limited extent.

## 19. Mooted Motions

By reason of the settlement between plaintiffs and Sears, each of the following motions has been mooted: document 54, plaintiffs' motion to compel discovery of Sears; document 56, Sears' motion to compel production of documents; document 57, Sears' motion for summary judgment; document 76, Sears' motion for leave to file reply in support of motion to compel production of documents; document 75, plaintiffs' cross-motion for summary judgment as to Sears; document 82, Sears' motion to extend time for filing; document 84, Sears' motion to strike affidavit of

Attorney Cooper; document 85, Sears' motion to strike affidavit of John Georges; document 86, Sears' motion to strike plaintiffs' cross-motion for summary judgment; document 90, Sears' motion to strike portions of affidavits of Gary Dinco and Felix Weingart.

Moreover, the assented-to motion for number-one trial assignment (document 73) has been implicitly granted, as this case is now scheduled to be the number one jury case, with jury selection to commence at 9:30 a.m. on Tuesday, October 24, 1995.

## 20. Conclusion

The court has disposed of the issues raised by the pending motions in accordance with the terms and conditions of this order.  The case now appears ready to go forward for trial as scheduled on October 24, 1995.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 19, 1995

cc:  Randall F. Cooper, Esq.
     Steven J. Kantor, Esq.
     John L. Putnam, Esq.
     Kenneth H. Merritt, Esq.
     Eugene J. Kelley, Jr., Esq.
     James P. Bassett, Esq.